946 So.2d 42 (2006)
L.M., the Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D06-1968.
District Court of Appeal of Florida, Fourth District.
December 13, 2006.
*43 Jeffrey B. Levy of Law Office of Jeffrey B. Levy, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
SHAHOOD, J.
L.M., the mother, appeals the trial court order adjudicating her two minor children dependent as to her.[1] She argues first that the trial court erred in adjudicating the children dependent based upon neglect and substantial risk of imminent neglect. We affirm, finding the trial court's ruling was supported by competent substantial evidence. As her second issue, the mother claims the trial court erred by conducting an adjudicatory hearing without her present and while she was still deemed incompetent. We affirm on this issue based on the children's right to permanency and because the mother's due process rights were adequately safeguarded by her own attorney and the attorney ad litem.
*44 The mother contends that the trial court misapplied the law and its ruling was not supported by competent substantial evidence in the record. The Department of Children and Families ("DCF") argues that the court's ruling was supported by competent substantial evidence that the mother suffered from mental illness that adversely affected the children's care, exposed the children to illegal drugs in the home, and kept her home in a deplorable condition.
Under section 39.01, Florida Statutes, the definition of a dependent child includes one who has been abandoned, abused, or neglected by his or her parents, custodians, or caregivers or is at substantial risk of imminent harm from abandonment, abuse or neglect. § 39.01(14)(a), (f), Fla. Stat. (2006). For the purpose of protective investigations, abuse and neglect of a child include the acts or omissions of the parent. § 39.01(2),(43), Fla. Stat. (2006); G.V. v. Dep't of Children & Families, 795 So.2d 1043, 1047 (Fla. 3d DCA 2001). Abuse and neglect must be established by a preponderance of the evidence. § 39.507(1)(b), Fla. Stat. (2006).
The following facts were established at the adjudicatory hearing. Dr. Sharon Brown, a medical doctor and psychiatrist, conducted a brief fifteen-minute session with the mother on March 1, 2005. The mother denied that she had a mental illness. The mother was uncooperative and unwilling to be evaluated. Dr. Brown found the mother delusional, hyperactive, hyperverbal, and preoccupied with the Bible. At the end of the session, Dr. Brown witnessed the mother slap one of the children across the face over some minor misbehavior. Dr. Brown reported the incident to an abuse hotline.
Joanne Arnett, a child protective investigator with the Broward Sheriff's Office, investigated the slapping incident. Arnett went to the mother's home with a law enforcement officer. The mother told Arnett she did not know where the children were, but thought they were with her mother. Arnett found the home in a deplorable condition. The living room had dried blood on the floor, with clothes piled in one corner. The beds had no sheets, and the bed frames were disassembled and sticking up dangerously into the air. There were sheets covering the windows. The bathroom was full of dirty brown water. There was an unidentifiable black substance and a plunger in the bottom of the bathtub. The toilet had not been flushed and contained feces. The hallway closet had seven or eight live roaches in it. The kitchen had dirty dishes in the sink and on the counter. The cabinets were completely bare. The only food in the house was a bottle of juice, a half-eaten cookie, and half of a bag of frozen chicken. Arnett believed the home was not safe for the children.
Arnett described the mother's mood as "sporadic." She began the encounter with Arnett very hostile but calmed down and talked for awhile. Then she started yelling and screaming and became uncooperative. The mother admitted to smoking marijuana, and there was a thick marijuana cigar in the home. As a result, law enforcement took her into custody.
Joyce Bryan, a child advocate from ChildNet, began working on this case in August 2005. During that time, she met with the mother only twice. Both meetings occurred outside the courtroom, before court proceedings. The first time she met the mother, Bryan introduced herself as the new child advocate, handed the mother her card, and told the mother that Bryan would need to contact her. The mother started cursing at Bryan and walked away. The second time they met, *45 the mother just looked at Bryan, pointed, and mumbled something.
We hold there was competent substantial evidence to support the trial court's finding that the children were neglected or at substantial risk of imminent neglect based upon the mother's mental state, the presence of illegal drugs in the home, and the conditions of the home. We note that in the absence of evidence of a nexus between the mother's drug use and harm to the children, the trial court correctly considered the marijuana only to the extent its presence in the home posed a danger to the children. See R.S. v. Dep't of Children & Families, 881 So.2d 1130, 1132 (Fla. 4th DCA 2004) (reversing dependency ruling where no evidence showed father's substance abuse problem affected his ability to parent and father did not expose children to controlled substances).
The mother also argues the trial court denied her due process by conducting the adjudicatory hearing without her present and while she was still incompetent. We disagree.
On March 4, 2005, DCF filed an affidavit and petition for placement of the children in shelter. An order placing the children in shelter and restricting the mother to supervised visitation was signed the same day. DCF later filed a Verified Petition for Dependency incorporating the allegations of the shelter petition. The mother did not appear at an arraignment hearing on March 28, 2005, but was represented by her attorney. The court reset arraignment for the mother and scheduled a mediation hearing. The mother did not appear at mediation or arraignment on April 21, 2005, but was again represented by her attorney. The court again reset arraignment.
On April 26, 2005, the mother appeared for arraignment. No plea was entered. The court granted the mother's counsel's request for a competency evaluation due to concerns the mother might not be competent to proceed.
On June 14, 2005, the court conducted another arraignment. The mother and her counsel were in attendance. No action was taken because the mother's competency evaluation had not been completed. The court reset the matter for a competency evaluation status hearing. On July 27, 2005, after a judicial review hearing, the court noted that the mother's competency evaluation was still pending. At an August 17, 2005 status hearing, the court found that the mother had shown up for her scheduled competency evaluation on August 7, 2005, but did not remain for the evaluation. The court appointed an attorney ad litem to assist the mother and ordered the mother's counsel to reschedule another competency evaluation.
The mother's counsel eventually filed a completed competency evaluation performed by Dr. Brannon. Dr. Brannon evaluated the mother incompetent to stand trial. His report stated that the mother posed an imminent risk of danger to herself and others and recommended involuntary psychiatric hospitalization due to his finding that the mother was "suffering from the active symptoms of a major mental disorder." The report found the mother "unable to demonstrate an adequate factual knowledge or rational appreciation of the legal knowledge necessary for her to competently proceed to a final hearing/trial in her dependency case."
The court held an adjudicatory hearing on November 7, 2005. The mother was present and represented by counsel. After reviewing Dr. Brannon's report and the behavior of the mother in court, the court involuntarily committed the mother and appointed an attorney ad litem to assist her. On November 16, 2005, mediation *46 was reset to allow the attorney ad litem to consult with the mother. The court also found that there were extraordinary reasons to continue the adjudicatory hearing due to the mother's incompetence.
A permanency review hearing was held on January 23, 2006, at which the mother's attorney was present. The mother was not present and no findings were made as to her because her trial was pending. The court's subsequent order noted due process concerns due to the fact the mother had been deemed incompetent and the children had not yet been adjudicated dependent.
The mother was not present for pretrial on April 5, 2006. The court maintained the trial date of May 1, 2006, finding that "the Juvenile Rules and Chapter 39 are silent on incompetency and as such, the court will go forward with trial as it serves the children's best interests and their need for permanency." The adjudicatory trial was held on May 1, 2006. The mother did not appear but was represented by counsel. She also had the benefit of the attorney ad litem's presence. The court denied the mother's attorney and attorney ad litem's motions to continue the trial due to the mother's incompetency, finding the mother's rights adequately protected by the attorney ad litem and her defense counsel.
We find no merit in the mother's contention that the trial court violated her due process rights by holding an adjudicatory hearing without her present and while she was still deemed incompetent. The foregoing chronology of events demonstrates that she had the benefit of her defense counsel at every stage of the proceedings and the attorney ad litem for many of them. We find the mother's rights were adequately protected.
We also must consider the best interests of the children. The record demonstrates that the arraignment, mediation, and adjudicatory hearing were each reset several times. As a result, the dependency trial did not occur until more than one year after the dependency petition was filed and the children were placed in foster care. To delay the proceedings indefinitely due to the mother's competency issues would deprive the children of their right to permanency and run contrary to the goal that no child remain in foster care longer than one year. See § 39.001(1)(h),(i), Fla. Stat. (2006); B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1256 (Fla.2004); C.M. v. Dep't of Children & Family Servs., 854 So.2d 777, 779 (Fla. 4th DCA 2003) (stating that "courts are compelled to expedite proceedings to prevent children from languishing in the foster care system. . . . Achieving permanent stability in the child's life is the paramount concern of the judicial process"). We hold that to the extent the mother's due process rights were affected by the trial court's decision to proceed, those rights must yield to the needs of the children.
Affirmed.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] T.M., born November 19, 2001, and H.M., born August 23, 2000. The children have different biological fathers.