959 So.2d 1209 (2007)
S.K., the Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D06-3830.
District Court of Appeal of Florida, Fourth District.
June 20, 2007.
*1210 Denise E. Kistner of Law Offices of Denise E. Kistner, P.A., Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, J.
A father, in prison for life, appeals the trial court's order adjudicating his minor child dependent as to the father. He claims that the trial court deprived him of due process by failing to appoint an attorney ad litem to represent him when he was indisputably incompetent. Because he was represented by counsel throughout the proceedings, no violation of due process occurred. The trial court correctly ruled that the dependency proceedings could not be delayed to await his restoration to competency. Finding ample evidence to support the trial court's adjudication of dependency, we affirm.
In August 2005 the Department of Children and Families filed a petition to declare K.K., a thirteen-year-old child, dependent as to both his mother and his father, S.K. The mother had abused the child and suffered from mental disorders. S.K. had been convicted of first-degree murder in 1998 and since that time had not had any contact with the child. The mother consented to the dependency before the arraignment.
The Department experienced difficulty in getting S.K. transported to an arraignment hearing. When the court finally held one in December 2005, S.K. exhibited bizarre thought patterns, prompting the court to appoint counsel for S.K. Ultimately, the court ordered a competency examination for S.K. Because of difficulties both with scheduling and with S.K., the competency evaluation did not occur until late spring of 2006.
After the examination report was received, S.K.'s counsel moved for a continuance of the final hearing, because he believed his client to be incompetent. Counsel wanted him restored to competency before proceeding with the hearings. At the hearing, counsel called the psychologist, Dr. Brannon, to testify with respect to S.K.'s competency. He testified that under the criminal standard, S.K.'s psychotic disorders rendered him incompetent to participate in his defense. Those disorders would prevent S.K. from engaging in behaviors necessary for parenting and rendered him a danger to himself and others. S.K.'s counsel also requested the appointment of an attorney ad litem for S.K. Unsure of how to proceed where neither the statutes nor the rules addressed the issue of incompetency of a parent, the trial court continued the final hearing for thirty days.
At the final hearing, S.K.'s counsel objected again to the failure to appoint an attorney ad litem, but the trial court refused, mainly because there was no funding for attorneys ad litem. The hearing proceeded with S.K.'s counsel representing S.K. The trial court listened to S.K.'s comments and arguments throughout with patience. S.K. confused this dependency hearing with his criminal proceedings. *1211 However, he was clear that he did not want to be responsible for support for K.K., and he was quite concerned about owing money for his care.
The only witness to testify at the hearing was a child protective investigator. Without objection, she testified that her investigation revealed that S.K. was sentenced to life in prison. Based upon her investigation, he had not paid any child support for K.K., nor has the child received any communication from S.K. When the Department asked about statements from the mother regarding S.K.'s communication, S.K.'s counsel objected, and over objection, the investigator testified that the mother had told him that S.K. had not paid support or communicated with K.K. Should S.K. ever get out of prison, the investigator would recommend services to be provided for S.K., as S.K. has not seen K.K. for a long time.
Counsel for the father moved for a directed verdict, claiming that the Department failed to show that the father had the ability to provide child support or establish some type of relationship with the child. Counsel argued that the mother's out-of-court allegations concerning S.K.'s failure to provide support were not corroborated and that the mother was not subject to cross-examination. At the conclusion of the hearing, the court found the child dependent because "the father has not been able to provide" and "will not be able to provide for the child in the foreseeable future."
On August 25, 2006, the trial court entered a Dependency Proceedings Order of Disposition. This order, however, largely mirrored the prior order of adjudication and included the following findings:
The father, [S.K.], has abandoned the child as defined in Florida Statute 39.01(1) in that the father, while being able, has made no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. The father is currently incarcerated at Dade County Correctional Institution since 1998, sentenced to life for a first degree murder charge.
Furthermore, on March 16, 2006, Dr. Michael P. Brannon conducted a competency evaluation on [S.K.] and reduced his findings to a report dated March 18, 2006 which was accepted into evidence without opposition. He concluded that [S.K.] was not competent and posed a risk of harm to himself and others.
These activities and/or environments harmed the child as defined in Florida Statutes 39.01(30) and/or caused the child's physical, mental or emotional health to be significantly impaired.
The tasks for the father in the disposition order included following the recommendations in his competency evaluation in order to regain competence, appropriately participating in services made available at the correctional facility, completing a parental education program "as may be available," and participating in family therapy "as DCF may make available." S.K. appeals this order of disposition.
S.K.'s main issue of concern involves a denial of his due process rights by proceeding while he was incompetent to participate in his defense and by failing to appoint an attorney ad litem to represent him. S.K. seeks to apply criminal concepts, where a deprivation of liberty of the defendant is at stake, to this civil proceeding where the best interests of his child, not the parent's best interests, are of paramount concern.
This court recently addressed the due process implications of parental incompetency in a dependency proceeding. See *1212 L.M. v. Dep't of Children & Families, 946 So.2d 42 (Fla. 4th DCA 2006). There, the court-ordered evaluation of the mother in L.M. found her to be incompetent to proceed to trial. The mother, however, was represented by counsel, and the trial court had also appointed an attorney ad litem when the mother failed to appear for the competency evaluation. The mother contended that the court erred in proceeding with the final adjudication when she was incompetent to proceed. Noting that she was represented both by counsel and, in some hearings, by an attorney ad litem, we determined that the mother had the benefit of counsel at every step of the proceedings. This court noted that the best interests of the children had to be considered, and explained:
To delay the proceedings indefinitely due to the mother's competency issues would deprive the children of their right to permanency and run contrary to the goal that no child remain in foster care longer than one year. . . . We hold that to the extent the mother's due process rights were affected by the trial court's decision to proceed, those rights must yield to the needs of the children.
Id. at 46.
Both S.K. and the Department note that Chapter 39, Florida Statutes, gives little direction to the court as to how to proceed in a dependency case where a parent is incompetent. Section 39.407(15), Florida Statutes (2006), and Florida Rule of Juvenile Procedure 8.250(b) permit a mental health assessment of a parent when the mental health is in controversy. The rule further authorizes the court to require a parent to undergo "evaluation, treatment, or counseling activities as authorized by law." Section 39.502(15) requires that a parent who is identified with a mental illness be advised of the availability of mental health advocacy services. However, we find no provision that these services would be available for an incarcerated prisoner.
Section 39.501(2) states that: "The purpose of a petition seeking the adjudication of a child as a dependent child is the protection of the child and not the punishment of the person creating the condition of dependency." The whole purpose of a dependency proceeding is to protect the child and to provide services and activities to address and correct the problems and issues which gave rise to the dependency and the intervention of the Department to protect the child. If a parent is incompetent, the purpose of the dependency may be to obtain treatment for that parent to restore him to competency so that he can be a functioning parent. It makes no sense and is circular to require the parent to become competent in order to proceed with the dependency adjudication, if the incompetency were the very reason why the dependency proceeding was brought in the first place. We conclude that due process does not require a parent to be restored to competency in order to participate in an adjudicatory hearing on his or her child's dependency.
In dependency proceedings, a parent is entitled to the services of an attorney, unless he or she waives that right. See Fla. R. Juv. P. 8.320. S.K. did not waive that right, and the trial court appointed an attorney to represent him. Once the doctor determined that S.K. was not competent to assist in the litigation, S.K.'s counsel requested that the court appoint an attorney ad litem. We do not understand this request. S.K. already had counsel, and counsel was not prevented from advocating on his behalf. Rule 4-1.14 of the Rules Regulating the Florida Bar provides the following guidance with respect to the representation of a client under a disability:

*1213 (a) Maintenance of Normal Relationship. When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) Appointment of Guardian. A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.
Thus, unless the client is completely unable to express and act in his own interest, the attorney can continue to represent him. When the client cannot adequately act in his or her own interest, the lawyer seeks the appointment of a guardian, not an attorney ad litem.
There is no provision in any rule or statute for the appointment of an attorney ad litem for a parent. Provision is made for the appointment of an attorney ad litem for a child. See, e.g., Fla. R. Juv. P. 8.217. The explanation is simple. Parents are already provided attorneys, while until recently children were not. As was noted in Amendment to the Rules of Juvenile Procedure, Fla. R. Juv. P. 8.350., 804 So.2d 1206, 1210 (Fla.2001), "`attorneys [ad litem] serve the essential role of advocating in court so that the child is represented by an attorney as are all of the other parties.'" (quoting the Children's Advocacy Foundation brief). Thus, the attorney ad litem performs the duties of an attorney. The parent, already appointed his or her own attorney, does not need another one because he or she is incompetent.
From a review of the record, S.K.'s counsel provided exemplary representation for S.K., given very difficult circumstances. He aggressively defended S.K., made the appropriate motions, and never waived any of S.K.'s rights. His job was made most difficult by his client, and we commend the professional manner in which he handled this matter.
As the Rule Regulating the Florida Bar suggests, appointment of a guardian for an incompetent person may be appropriate in some circumstances, even within a dependency proceeding. We need not address that issue, because no one requested the appointment of a guardian. Nor was the appointment of a guardian ad litem requested. In fact, while expert evidence was presented that S.K. was incompetent to participate in his defense and he was a danger to himself and others, the court never found him totally incapacitated to the point that he could not participate and express his ideas and wishes. He actually did that quite well, and once he understood that the proceeding would not result in an order requiring him to support K.K., he acknowledged that he could not have custody of his child (nor did it appear that he wanted that). His only reservation was placing custody of the child with his maternal aunt, whom he said had a house full of guns. The court ordered the state to evaluate the home.
Given the circumstances of this case, S.K. was provided due process and the proceeding was fundamentally fair. In fact, the lawyers and the court bent over backwards to provide due process to S.K. who had no defense to the proceeding at all. The Department proved the need for a dependency adjudication against S.K. with overwhelming evidence. The parties stipulated that the father was convicted of first-degree murder and has been serving a life sentence since 1998. The child protective investigator testified that S.K. had not spoken to his son or supported him. *1214 Even if that testimony were hearsay, it would have been harmless, because in addition to S.K.'s imprisonment, the competency examination provided more than enough evidence to support a dependency adjudication when the expert testified that S.K. was a danger to himself and others, and his mental disability prevented him from engaging in appropriate parenting behavior.
For the foregoing reasons, we affirm.
STEVENSON, C.J., and SHAHOOD, J., concur.