SHEPHERD, J.
In this petition, G.W., the father of M.W. and R.K.W., seeks certiorari relief quashing an order sheltering two of his children on the ground he summarily was deprived of his constitutional and statutory right to counsel at the hearing. We grant the petition.
On April 8, 2012, J.T. gave birth to R.K.W. at Homestead Hospital. R.K.W. tested positive for cocaine. On April 10, 2012, R.K.W. was taken into protective custody by the Florida Department of Children and Families. Based upon the alleged “evasiveness of the mother,” the Department also removed two-year-old M.W.[1]
The trial judge held the shelter hearing on April 11, 2012. The mother was represented by Regional Conflict Counsel. The father was present, but unrepresented. The mother has a long history with the Department.[2] This is the father’s first encounter with the system. On the morning of the hearing, the Center for Family and Child Enrichment reported the mother tested positive for cocaine and the father tested positive that morning for both oxycontin and cocaine. The father claims he takes over twenty-five pills per day, including cocaine, for “medicine reasons.” Based upon this history, the trial court stated she “assume[d] we’re going straight to TPR [termination of parental rights]” for the mother, an assertion not forcefully disputed by counsel to the Department. See § 39.806(2)-(4), Fla. Stat. (2011). All agreed that G.W. did not qualify for a petition for expedited termination of rights. Id. In fact, the Shelter Order itself states:
the father of [M.W.] and [R.K.W.] has not been eliminated as a possible future placement for the children. However, the Department is not recommending that the children be placed with him at this time. The father has not yet been drug tested. Additionally, he resides with the mother, who finally admitted after the children were removed, that [M.W.] has been living with her in Key Largo.
Section 39.402(5)(b)2 of the Florida Statutes (2012) makes it clear that “if indigent, ... parents have the right to be represented by appointed counsel ... pursuant to the procedures set forth in s[ection] 39.013 [of the Florida Statutes].” *309 Section 39.013 of the Florida Statutes (2011), provides:
(1) All procedures, including petitions, pleadings, subpoenas, summonses, and hearings, in this chapter shall be conducted according to the Florida Rules of Juvenile Procedure unless otherwise provided by law. Parents must be informed by the court of their right to counsel in dependency proceedings at each stage of the dependency proceedings. Parents who are unable to afford counsel must be appointed counsel.
[[Image here]]
(9)(a) At each stage of the proceedings under this chapter, the court shall advise the parents of the right to counsel. The court shall appoint counsel for indigent parents. The court shall ascertain whether the right to counsel is understood. When right to counsel is waived, the court shall determine whether the waiver is knowing and intelligent. The court shall enter its findings in writing with respect to the appointment or waiver of counsel for indigent parents or the waiver of counsel by nonindigent parents.
See also Fla. R. Juv. Pro. 8.305(b)(6)(A) (providing the trial court must advise the parent of the right to counsel); accord In re A.G., 40 So.3d 908, 909 (Fla. 3d DCA 2010); S.K. v. Dep’t of Children & Families, 959 So.2d 1209, 1212 (stating that in dependency proceedings, a parent is entitled to an attorney unless the parent waives that right).
In the midst of the staccato-paced hearing conducted by the trial court in this case, the court stated, inter alia, “and I’m appointing counsel for the father.” Under the circumstance, the father missed the point. As the hearing continued, both the father and his family members[3] begged to speak to the court. The father stated on two occasions: “Can I say something?”, “Can I say something, please?” Then, as the trial court indicated she was prepared to close down the hearing, he asked, “Why can’t I say anything?”, to which the court finally acceded briefly. On the last page of the shelter hearing transcript, the trial court stated, “And you call your lawyer, [G.W.], okay?”, to which G.W. responded, “Hold on, I didn’t know I had one.” An unidentified speaker said, “They’re going to give [one] to you.”[4] After scheduling dates for further proceedings, the hearing then concluded.
As well explained in A.G. v. Florida Department of Children & Families, 65 So.3d 1180 (Fla. 1st DCA 2011), parents are entitled to counsel at shelter hearings in this state. In AG., following the filing of a shelter petition, the trial court held a hearing on the petition. Although the mother was represented by counsel, the father had no attorney present. Id. at 1181. The trial court did not inquire whether the father had an attorney and it did not clarify whether the father wanted to waive his right to counsel. Id. As in the case before us, the trial court in AG. appointed counsel to represent the father, but only for future proceedings. Id. at 1182. Our sister court concluded the trial court should have advised the father of his right to counsel and should have appointed counsel before proceeding further with the hearing. Id. at 1183. Likewise, we here conclude the trial court should have advised G.W. of his right to counsel before *310 proceeding with the shelter hearing. As chronicled in A.G., the statutes and rules governing shelter hearings are replete with language requiring counsel at this stage of the dependency process. Id. at 1182. This statutory right is grounded in due process. See A.W.P., Jr., 10 So.3d 134, 135-136 (Fla. 2d DCA 2009). The trial court’s failure to provide the father the opportunity to have counsel present at the shelter hearing constituted a clear departure from the essential requirements of law, amounting to a miscarriage of justice.
Petition granted; order quashed.

. M.W. apparently lives much of her time with the father’s Key Largo family. During the course of this appeal, the trial court has transferred this case from Miami-Dade to Monroe County Circuit Court.

. The mother became a ward of the Florida Department of Children and Families in 1989 when, at the age of 15, she gave birth to her first child. M.W. and R.K.W. are her eighth and ninth children. All of the children have come into the system. One child died as a result of head injuries due to lack of supervision. Another was brought into DCF custody after he received a skull fracture during a physical altercation between the parents.

. Family members present sought to have the children placed with them, separate and apart from both parents, instead of foster parents.

. The trial court appointed Richard F. Joyce from a pool of attorneys available when Regional Conflict counsel has a conflict. Mr. Joyce, of course, was not at that moment in or near the courtroom.