SECOND DIVISION
FILED: September 26, 2006

No. 1-06-1206

| | | |
|---|---|---|
| In re CHARLES A., minor, | ) | APPEAL FROM THE |
| (THE PEOPLE OF THE STATE OF ILLINOIS | ) | CIRCUIT COURT OF |
| | ) | COOK COUNTY |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WANDA A., | ) | HONORABLE |
| | ) | BETTINA M. GEMBALA |
| Respondent-Appellant). | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The respondent, Wanda A., appeals from an order of the circuit court terminating her parental rights with her son, C.A. For the reasons which follow, we affirm.

C.A. was born on August 25, 2003. On September 5, 2003, the State filed a petition for adjudication of wardship, alleging that C.A. was neglected pursuant to section 2-4(1)(b) of the Juvenile Court Act (Act) (705 ILCS 405/2-4(1)(b) (West 2002)) because of the respondent's mental disability. According to the petition, the respondent had previously been diagnosed with schizoaffective disorder and had resided in psychiatric rehabilitation facilities for approximately five years.

Following an adjudicatory hearing on February 11, 2004, C.A. was found to be neglected based on an injurious environment. On May 19, 2004, a dispositional order was entered, finding that the respondent was unable to care for C.A., adjudicating the minor a ward of the court, and placing him in the guardianship of the Department of Child and Family Services (DCFS). The State filed a supplemental petition for the appointment of a

guardian with the right to consent to adoption on March 15, 2005.

On September 5, 2005, the respondent's attorney filed a motion asking the court to hold a fitness to stand trial hearing. The circuit court subsequently denied the motion.

A termination hearing was held on December 19, 2005, and February 21, 2006. At the hearing, Chrissy Reynolds, C.A.'s case worker, testified that C.A. was brought to the attention of the DCFS because the respondent had a history of mental illness, the respondent tested positive for cocaine at the time of the birth, and the respondent stated that she did not want to care for C.A. The respondent was assessed for services, and it was determined that she was in need of a drug and alcohol evaluation and treatment plan, treatment for her mental illness, and a parenting assessment. Reynolds testified that the only service the respondent had complied with was the treatment plan for her mental illness, but not on a consistent basis.

Dr. Tiffany Masson, a clinical psychologist, testified that the respondent was referred to her for an evaluation by the court. After examining the respondent and reviewing her medical records, Dr. Masson diagnosed her with schizophrenia and schizoaffective disorder. Dr. Masson opined that the respondent's mental illness directly impacted her ability to discharge her parental responsibilities and that she could not care for the basic needs of her child. Dr. Masson also believed that the respondent's mental illness would last throughout her lifetime.

At the conclusion of the hearing, the circuit court found the respondent unfit based on her failure to maintain a reasonable degree of interest, failure to make reasonable

progress toward the return of the child, and inability to discharge her parental responsibilities. The court further found that it was in C.A.'s best interest to terminate the respondent's parental rights and appoint a guardian with the right to consent to adoption. This appeal followed.

The respondent argues that the circuit court erred in denying her request for a fitness hearing. Under long-established principles of due process, an individual may not be criminally prosecuted if he or she is unfit to stand trial. Medina v. California, 505 U.S. 437, 446, 120 L. Ed.2d 353, 112 S. Ct. 2572 (1992); People v. Johnson, 206 Ill. 2d 348, 361, 794 N.E.2d 294 (2002). To ensure these due process rights, a circuit court is required to conduct a mental fitness hearing if there exists a bona fide doubt as to a criminal defendant's fitness to understand the nature and purpose of the proceedings and to assist in his or her defense. People v. Birdsall, 172 Ill. 2d 464, 475, 670 N.E.2d 700 (1996); 725 ILCS 5/104-10 (West 2002). Should a criminal defendant be found unfit at the hearing, the proceedings may be suspended until he or she recovers. See 725 ILCS 5/104-16 (West 2002).

The respondent maintains that, because of her history of mental illness, the circuit court was required to conduct a fitness hearing to determine whether she was able to understand and participate in her defense at the termination hearing. Because the circuit court failed to hold such a hearing, the respondent contends that she was denied her constitutional right to due process. We disagree.

Under the 14th Amendment of the United States Constitution, a person cannot be

deprived of life, liberty, or property without due process of law.  U.S. Const., amend. XIV, § 1.  A parent has a fundamental liberty interest in maintaining custody of his or her child. Santosky v. Kramer, 455 U.S. 745, 753, 71 L. Ed.2d 599, 102 S. Ct. 1388 (1982); In re Andrea F., 208 Ill. 2d 148, 165, 802 N.E.2d 782 (2003).  Accordingly, the procedures employed in terminating parental rights must comply with the requirements of the due process clause.  Santosky, 455 U.S. at 753; In re M.H., 196 Ill. 2d 356, 363, 751 N.E.2d 1134 (2001).

In determining whether a parental rights termination proceeding satisfied the constitutional requirements of due process, the factors set forth in Matthews v. Eldridge, 424 U.S. 319, 47 L. Ed.2d 18, 96 S. Ct. 893 (1976), must be considered.  Lassiter v. Department of Social Services, 452 U.S. 18, 27, 68 L. Ed.2d 640, 101 S. Ct. 2153 (1981); In re Andrea F., 208 Ill. 2d at 165.  These factors include:  (1) the private interest affected by the proceeding; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or alternative procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or alternative procedures would require. Matthews, 424 U.S. at 335.

Two private interests are involved in a proceeding to terminate parental rights:  the parent's interest in raising his or her child and the child's interest in a safe and stable home environment.  In re D.T., 212 Ill. 2d 347, 363, 818 N.E.2d 1214 (2004).  A parent has a fundamental desire and right to the companionship, care, custody, and management of his

or her children.   Lassiter, 452 U.S. at 27; In re M.H., 196 Ill. 2d at 365.  When a parental rights termination proceeding is brought, the State seeks not only to infringe this right, but to end it.  Santosky, 455 U.S. at 759.  Therefore, a parent has a commanding interest in the outcome of a termination proceeding.  Lassiter, 452 U.S. at 27.  The child also has a private interest in his or her own well-being and a stable environment.  People v. R.G., 131 Ill. 2d 328, 354, 546 N.E.2d 533 (1989).  Additionally, a child has an interest in ending State custody.  In re Bernice B., 352 Ill. App. 3d 167, 176, 815 N.E.2d 778 (2004).

The State, likewise, has an important interest in a parental rights termination proceeding.  Its interest is twofold:  a parens patriae interest in the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings. Santosky, 455 U.S. at 766; In re M.H., 196 Ill. 2d at 367.

Because a delay in the adjudication of a termination proceeding can cause grave harm to a child and the family, (705 ILCS 405/2-14(a) (West 2002)), parental termination cases must be resolved expeditiously.  See In re S.G., 175 Ill. 2d 471, 492, 677 N.E.2d 920 (1997).  The postponement of termination proceedings, for a fitness hearing or until the respondent could be restored to fitness, would further delay a child's interest in finding a permanent home.  In re Bernice B., 352 Ill. App. 3d at 178.  Accordingly, such an indefinite postponement would frustrate the State's parens patriae interest in promoting the welfare of the child.  In re Bernice B., 352 Ill. App. 3d at 177-78.

Determining whether a parent is mentally fit would also impose an increased fiscal cost and administrative burden on the State.  The State would be required to expend legal

resources to establish the respondent's competency and, possibly, be required to pay for the treatment to restore her to fitness.  In re Bernice B., 352 Ill. App. 3d at 178.  The State would also be required to continue to pay for the child's foster care during the delay caused by the fitness hearing.  In re Bernice B., 352 Ill. App. 3d at 178.

Finally, we must consider to what extent the absence of a fitness hearing increased the risk of an erroneous deprivation of the respondent's rights and the probable value, if any, of additional or alternative procedural safeguards.  The respondent argues that the failure to hold a fitness hearing increased the likelihood that her parental rights were erroneously terminated where she was unable to understand or participate in her defense.  The respondent, however, has failed to explain how she could have better assisted her attorney had she been found competent to participate in the termination proceedings.  She has not identified any additional evidence that would have been introduced or presented any argument explaining how the outcome of the termination hearing would have been different had the proceedings been stayed until she was restored to fitness.

Additionally, a parent may be found unfit if the parent suffers from a mental impairment which renders him or her unable to discharge a parent's normal responsibilities for a reasonable period of time.  In re R.C., 195 Ill. 2d 291, 305, 745 N.E.2d 1233 (2001); 750 ILCS 50/1(D)(p) (West 2002).  Accordingly, a finding at a fitness hearing that the respondent was not mentally fit could have provided additional evidence weighing in favor of termination.  In re Bernice B., 352 Ill. App. 3d at 177.

The current procedures provided for under the Act properly safeguard a parent's

rights. Parents have the right to be present, to be heard, to present evidence, to cross-examine witnesses, to examine court files and records, and to be represented by counsel. 705 ILCS 405/105(1) (West 2002). In this case, the respondent was represented by counsel, who cross-examined witnesses and argued her case. Based upon the record before us, we conclude that the absence of a fitness hearing offered little or no risk that the respondent's parental rights were erroneously terminated.

After considering the Matthews factors, we find that the respondent was not denied due process by the circuit court's failure to hold a fitness hearing. Having rejected the only basis for reversal raised by the respondent, we affirm the circuit court's order terminating the respondent's parental rights.

Affirmed.

SOUTH, J., concurs.

HALL, J., dissenting.

JUSTICE HALL dissenting.

I respectfully dissent. In applying the *Mathews*' factors, I believe the due process clause of the federal constitution (U.S. Const. Amend. XIV, § 1) requires a trial court in a termination proceeding to hold a competency hearing for a parent where the parent's attorney requests such a hearing, or in the absence of such a request, the behavior of the parent suggests to the court that a competency hearing should be held. See *In re Alexander*, 223 Conn. 557, 566, 613 A.2d 780, 785 (1992). In either situation, the standard the trial court should be guided by is whether the record before the court contains specific factual allegations that, if true, would constitute substantial evidence of mental impairment. *In re Alexander*, 223 Conn. at 566, 613 A.2d at 785, citing *State v. Lloyd*, 199 Conn. 359, 365, 507 A.2d 992 (1986).

In this case, the majority maintains that postponing a termination proceeding until a competency hearing is completed or until a parent's competency is restored would delay a child's interest in finding a permanent home and undermine the State's *parens patriae* interest in protecting the child's welfare. This argument is too broad to comport with due process and fundamental fairness because in certain cases a parent's competency may be restored within a relatively short period of time. Holding a competency hearing would give the parties an opportunity to present evidence concerning the likelihood that the parent

could be restored to competency within a reasonable time. *In re Alexander*, 223 Conn. at 564, 613 A.2d at 785. The trial court would then be in a position to determine the most appropriate and beneficial course of action.

The majority also contends that a competency hearing would impose an increased fiscal cost and administrative burden on the State. I do not believe that the administrative costs of holding a competency hearing are prohibitive when balanced against a parent's fundamental right to the care, companionship, custody, and management of his or her child. The United States Supreme Court has determined that a parent's interest in retaining custody of his or her child outweighs the State's interest in avoiding the comparatively minimal costs of a fitness hearing. See *Stanley v. Illinois*, 405 U.S. 645, 657 n. 9, 31 L. Ed. 2d 551, 562 n. 9, 92 S. Ct. 1208, 1215-16 n. 9 (1972).

The majority finally contends that where a parent is represented by counsel, the absence of a fitness hearing offers little or no risk of an erroneous deprivation of parental rights. I disagree.

A mentally incompetent parent who is unable to understand the nature of a termination proceeding or assist his or her attorney in presenting the case could be at a severe disadvantage. A mentally incompetent parent may be unable to supply an attorney with sufficient information to rebut evidence offered by the State, which, although superficially damaging, could be refuted by a competent parent or a witness whose availability would be made known by a competent parent. See *In re Alexander*, 223 Conn. at 563, 613 A.2d at 784. In addition, a mentally incompetent parent's ability to offer

affirmative proof of the existence or prospect of an ongoing parent-child relationship might be significantly compromised. See *In re Alexander*, 223 Conn. at 563, 613 A.2d at 784. A mentally incompetent parent might also be unable to assist his or her attorney in establishing tactical and substantive goals at a termination proceeding. See *In re Alexander*, 223 Conn. at 563, 613 A.2d at 784. In sum, there is a substantial risk that a mentally incompetent parent, who is unable to understand the nature of a termination proceeding or assist his or her attorney in presenting the case, might suffer an erroneous deprivation of parental rights even where the parent is represented by counsel.