No. 3-06-0425

_____

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

_____

|  |  | Filed October 18, 2007. |
|---|---|---|
| In Re C.S., a Minor | ) | Appeal from the Circuit Court |
|  | ) | for the 10th Judicial Circuit, |
|  | ) | Peoria County, Illinois, |
| The People of the State of Illinois | ) |  |
|  | ) |  |
| Petitioner-Appellee, | ) | 05-JA-163 |
|  | ) |  |
| v. | ) |  |
|  | ) | Honorable David J. Dubicki |
| Natalie S., | ) | Judge, Presiding. |
|  | ) |  |
| Respondent-Appellant. | ) |  |

_____

MODIFIED UPON DENIAL OF PETITION FOR REHEARING
JUSTICE McDADE delivered the opinion of the court:

_____

Following a hearing in the circuit court of Peoria County, C.S. was found to be a neglected and dependent minor. Respondent mother, Natalie S., was subsequently found unfit. Respondent mother, Natalie S., raises the following questions on appeal: (1) Did the trial court err in denying her motions for a mental examination? (2) Was there sufficient evidence to support the finding of neglect? and (3) Did the trial court exceed its jurisdiction in finding respondent unfit? Upon review, we reverse and remand for further proceedings.

FACTS

C.S. was born on July 3, 2005. On August 1, 2005, the State filed a two-count petition for adjudication of wardship, alleging that C.S. was neglected pursuant to section 2-3(1)(b) of the

Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2006)) and was dependent pursuant to section 2-4(1)(b) of the Act (705 ILCS 405/2-4(1)(b) (West 2006)). In count I of the petition, the State alleged that the minor's environment is injurious to her welfare in that respondent suffers from psychological problems and is under the guardianship of the State of Illinois. In count II of the petition, the State alleged that C.S. is a dependent minor in that she is without proper care due to respondent's mental disability.

On January 3, 2006, respondent filed a petition for mental examination to determine both her fitness to stand trial on the State's charges and to obtain a current and complete diagnosis concerning her alleged psychiatric condition. The trial court summarily denied respondent's petition. At the adjudication hearing on January 23, 2006, appointed counsel for respondent made a subsequent oral motion for a mental examination of respondent. Upon hearing argument, the trial court again denied respondent's motion.

During the adjudicatory hearing, the State sought to introduce respondent's medical records. Exhibit 3 consisted of notations prepared by Dr. Patella-Kobler stating that the respondent admitted that she knew she was pregnant in January but she did not seek prenatal care because of the cost and because she did not know prenatal care was important. She admitted she did not tell the doctor she was pregnant even though she had been warned multiple times not to get pregnant. Dr. Patella-Kobler also noted that the respondent did not seem to understand how much care a newborn requires. Exhibit 3 was admitted into evidence over respondent's foundational and relevance objections. Likewise, respondent objected to the State's exhibit 5, which consisted of medical records from Methodist Medical Center. Exhibit 5 contains a summary report referencing a consultation Dr. Thena Poteat had with respondent at Methodist.

2

The summary report states in pertinent part:

> "Dr. Poteat determined that the patient had schizophrenia with possible schizoaffective disorder and determined that the patient was not able to adequately care for her newborn baby. "

Dr. Poteat's conclusion is based on the fact that respondent failed to obtain proper prenatal care for her unborn child and failed to cease taking her psychotropic medication while pregnant. The report also indicates, however, that respondent is "at her baseline and * * * stable psychiatrically on her current psychotropic medication regimen." It is unclear when this report was prepared. Exhibit 5 was also admitted into evidence over respondent's foundational and relevance objections.

Terri Kopeny of the Office of the State Guardian was the State's sole witness at the adjudicatory hearing. Kopeny testified that the State of Illinois had guardianship over respondent. Kopeny worked with respondent for about eight years and would visit her at home monthly for about 10 minutes. She noted that respondent lived with her parents and she stated that the home was a safe environment. The only time Kopeny has had to help respondent with making decisions is when she applied to get a medical card. She added that respondent is employed at Marshall Fields and takes her medication as prescribed. Despite this testimony and her admitted inability to provide any information about respondent's day-to-day decision-making skills, Kopeny testified that she would be concerned about respondent's ability to care for C.S.

Respondent testified on her own behalf at the adjudicatory hearing. She stated that Dr. Poteat had only met with her one time shortly after she gave birth to C.S. C.S. was not present during this encounter. Respondent also noted that she had attended the University of Iowa for

3

about three years.

Following argument, the trial court entered an adjudicatory order finding Counts I and II of the State's petition proven by a preponderance of the evidence. In coming to this conclusion, the court relied heavily upon respondent's alleged failure to provide sufficient prenatal care. Specifically, the court stated:

> "[The attorney for respondent] seems to make the argument that the mother can do whatever she wants to do while pregnant. It's her fetus, so to speak, and if she wishes to not take care of it, then the State has nothing to do with it. I don't believe that that argument is correct. She may choose to do what she wishes to do with it, with the fetus, but you know, there are times, I mean specifically by statute, if a mother ingests cocaine or whatever, and it winds up in the urine or meconium of the child, that's an automatic basis for neglect. * * * I think when you look at -- she was told repeatedly that, you know, if there's a possibility you become pregnant, you should not be on these medications, and I think that shows the fact that she continued to take them, that the child had to be on watch afterwards, that shows a lack of awareness and lack of appreciation as to the appropriate prenatal care and obviously leads to, I think a strong inference that she would not have the judgment to provide postnatal care."

At the May 15, 2006, dispositional hearing, Jennifer Keith, the caseworker testified that

4

she asked Terri Kopeny to sign a release, as guardian of respondent's person, so that respondent could obtain a parenting capacity assessment. Kopeny refused to sign the release, insisting that respondent is unable to parent due to her mental illness. Kopeny concluded that social services would be unnecessary and not beneficial. Keith, however, in her dispositional report dated April 18, 2006, recommended that respondent receive a psychiatric evaluation from her current psychiatrist, Dr. Nawas, and that respondent receive a parenting capacity assessment and job training.

Upon the conclusion of the dispositional hearing, the trial court found respondent unfit and determined that it was in the best interests of the minor to be made a ward of the court. The court also ordered the Office of the State Guardian to execute all authorizations and releases with regard to the respondent's psychiatric treatment and evaluation. The court ordered respondent to continue her psychiatric treatment and ordered a separate psychiatric exam. It also ordered a parenting capacity assessment and job training. This appeal followed.

ANALYSIS

Respondent first argues that the trial court erred in denying her two requests for a mental examination prior to and at the beginning of the adjudicatory hearing. Respondent asserts that the examination was necessary in order to obtain a complete and current diagnosis relating to her alleged psychiatric condition. Respondent maintains that only after such diagnosis had been made would it be possible to assess and determine the validity of the State's neglect and dependancy charges. Resolution of respondent's claim on this issue requires an examination of the statutory procedures established in the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq*. (West 2006)).

5

The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependancy and neglect petition are supported by a preponderance of evidence. 705 ILCS 405/2-18(1) (West 2006). Once a child has been adjudicated abused or neglected, the trial court must determine whether the parent is unfit to have physical custody of the child and whether, as a consequence of any unfitness, it is in the best interests of the child to be made a ward of the court. 705 ILCS 405/2-22(1) West 2006). A trial court may place the minor in the custody of a suitable relative or commit the minor to an agency for care and services if the trial court determines that the parents "[a]re unfit or are unable, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian * * *." 705 ILCS 405/2-27(1) (West 2006). The standard of proof in a trial court's finding of unfitness that does not result in complete termination of all parental rights is a preponderance of the evidence. *In re April C.*, 326 Ill. App. 3d 245, 257, 760 N.E.2d 101, 110 (2001).

Here, the State has brought a two-count complaint alleging that C.S. is a neglected and dependent minor. The sole basis for this complaint rests in the allegation that respondent is mentally disabled and suffers from psychological problems. Respondent has denied these allegations. Before the commencement of the adjudicatory hearing on these allegations, respondent twice petitioned the trial court (once in a written motion and once orally) to order a mental examination for her so that a current and complete evaluation could be established as to her psychological fitness. Both these motions were denied. We find that this was error.

Under the circumstances of this case, when the State begins neglect or dependency proceedings on *the sole ground* that respondent is mentally disabled and suffers from

6

psychological problems, we find that it would be both reasonable and practical to grant respondent's petition for a mental examination. In such a case, a mental examination protects the accuracy and fairness of the adjudication by ensuring that both the parties and the court have a current and complete diagnosis of respondent's mental condition. Without such an updated diagnosis, the risk that a parent might be erroneously deprived of her custodial rights is substantially increased. Perhaps more importantly, however, is the fact that the trial court's denial of respondent's requests for a mental examination in effect stripped her of the opportunity to develop any meaningful evidence to challenge the State's allegations. We find the State's response that respondent could have paid for her own examination to be nothing short of disingenuous in light of the fact that respondent had already been deemed indigent.

We believe that in cases where the State's sole basis for the asserted neglect is grounded in its allegation of the mother's claimed mental disability, it stands to reason that the availability of a current and complete mental examination would not only significantly improve the ability of the trial court to correctly rule on the validity of the State's allegations, but would also allow respondent an opportunity to present the trial court with additional, and clearly relevant, evidence, perhaps from expert witnesses, concerning her mental state, and more importantly, her ability to care for, support and provide for C.S. Overall, allowing for a mental examination at this stage and in these circumstances provides the trial court with a clearer understanding of the respondent's capabilities and of the best available avenues along which to proceed. Accordingly, the availability of a mental examination before the adjudicatory hearing would significantly enhance compliance with the statute, which provides that the purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependancy and neglect petition are

7

supported by a preponderance of evidence.

Here, the trial court rejected the respondent's requests for a mental examination before the adjudicatory hearing, but ordered, *sua sponte*, a psychiatric examination of respondent *after* finding her unfit. We find the procedure employed by the trial court to be counterintuitive. If the questions before the court at the adjudicatory and dispositional hearings are: (1) whether the minor is neglected on the basis of her parent's mental disability; and (2) whether the respondent is unfit on the basis of such alleged mental disability, it seems essential that the mental examination should be completed before these questions are answered. In failing to do so, the trial court effectively bars both parties from developing the complete and current evidence necessary to answer these questions. We therefore conclude that the trial court erred in denying respondent's petitions for a mental examination. Because of this erroneous denial, this cause must be remanded. For that reason, we do not reach the respondent's arguments concerning the evidence of neglect and jurisdiction.

In coming to this conclusion we note that we have reviewed the First District's decision in *In re Charles*, 367 Ill. App. 3d 800, 856 N.E.2d 569 (2006), and find it distinguishable. There, the State filed a juvenile neglect petition on the basis that the respondent suffered from schizophrenia. Prior to the *best interest hearing*, the respondent requested a competency hearing to determine her fitness to stand trial. The trial court denied the motion. Upon review, the First District affirmed on the basis that delaying the best interest hearing, for a competency hearing, would further delay a child's interest in finding a permanent home and frustrate the State's *parens patriae* interest in promoting the welfare of the child. *In re Charles*, 367 Ill. App. 3d at 803-04, 856 N.E.2d at 573.

The situation before the First District in *Charles* is procedurally different from the case at bar. As we have discussed, respondent here petitioned the trial court to order her mental examination before the adjudicatory hearing. While we recognize the underlying purpose of a juvenile proceeding is the protection of the child from neglect or abuse, the factors relied upon in *Charles*, such as the interests of the child, are not elements to be considered during the adjudicatory hearing. Because none of these interests were at issue when petitioner requested her examination, we find the holding in *Charles* distinguishable.

CONCLUSION

While we recognize that there is no statute or court rule requiring a trial court to order a mental examination before conducting an adjudicatory hearing and that in most cases the absence of such a rule is fully warranted, we believe that such an examination is necessary in the case where the respondent requests an exam and the State's entire juvenile neglect petition rests solely upon the allegation that the respondent is mentally disabled or suffers from psychological problems. We therefore reverse the trial court's finding of neglect and dependency in regard to C.S. and also its finding of unfitness in regard to respondent, and we remand this cause to the trial court with instructions that a mental examination and parenting assessment of the respondent be undertaken prior to a new adjudicatory hearing.

Reversed and remanded.

SCHMIDT, J., concurs.

JUSTICE WRIGHT specially concurring:

I specially concur with the majority decision because I believe there has been a denial of procedural due process for the mother in this case. On appeal, respondent mother argues the

9

circuit court violated her procedural due process rights by denying her the opportunity to be examined by an impartial psychiatric expert prior to the neglect and dependency hearings. I agree.

There is precedent in the case law for the court to order the State to bear the cost of providing an expert for the purpose of protecting the mother's procedural due process rights when the State's expert is biased. Our supreme court has recognized that the appointment of an expert, at the State's expense, is necessary in certain situations. A person attempting to show their own recovery from sexual dangerousness may have a psychiatric expert appointed when it is clear the State's experts will not be providing an unbiased opinion of the mental status of the sexually dangerous person. *People v. Burns*, 209 Ill. 2d 551, 574 (2004). An analogy may be drawn in those situations involving the recovery petitions of sexually dangerous persons.

In this case, the State relied upon the testimony of Terri Kopeny, mother's State guardian, as their sole witness during the adjudicatory hearing. However, the appointed State guardian ignored the mother's wishes to undergo a parenting evaluation and refused to consent to a parenting capacity assessment requested by the *minor's* caseworker, Ms. Keith, from Kid's Hope United. The guardian's bias in favor of the State's position is very evident from the record. The State guardian formulated her own determination that the mother was unfit and halted the flow of neutral information that may have assisted the court. The State guardian's refusal to cooperate prevented mother from presenting a defense to the State's allegations of neglect and dependency. In my opinion, a neutral expert is the key to fundamental fairness and due process in this unique case.

I have serious concerns that the guardian did not possess the authority to refuse permission to consent to medical or psychological care and may have acted beyond the scope of

10

her authority as guardian of the estate only. The Letters of Office issued to the Office of State Guardian, reviewed by the circuit court *in camera*, are captioned "Plenary Guardian of the Estate of A Disabled Person."

It is feasible, based on the record, the Office of State Guardian only controlled the mother's financial resources as payee for her Social Security benefits. The lack of clarity on this issue permeates every level of the circuit court's analysis. A clear determination of the scope of guardianship should be a primary concern after remand.

The requested evaluation should be completed at the State's expense and the mother's consent to those procedures should be validated.

For the foregoing reasons, I specially concur.