DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**A.M.,** the mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES,**
and **GUARDIAN AD LITEM PROGRAM,**
Appellees.

No. 4D17-699

[July 19, 2017]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael C. Heisey, Judge; L.T. Case No. 562015DP000209.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Kelley Schaeffer, Bradenton, for appellee Department of Children and Families.

Laura J. Lee, Sanford, for appellee Guardian Ad Litem Program.

LEVINE, J.

A child was sheltered due to a psychotic episode involving the mother. The Department of Children and Families subsequently petitioned to terminate the mother's parental rights due to her refusal to take necessary medications. The mother was then declared incompetent in an unrelated criminal trial. The question presented for our review is whether the mother's procedural due process rights require that her termination of parental rights trial not proceed until the mother is deemed competent, or whether the trial can proceed despite the fact that the mother was declared incompetent in an unrelated proceeding.

We find that the trial court did not err in allowing the termination proceeding to proceed while the mother was incompetent, since the termination proceeding did not violate the three-part balancing test used to determine the procedures required to deprive someone of a protected

interest, as enunciated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). We further conclude that the trial court did not abuse its discretion when it denied the mother's motion for continuance, under the facts of this case and where there was no assurance of when the mother would regain competence.

The child in this case was sheltered in 2015 following an incident where the mother had a psychotic episode and was committed to a mental health facility. The child was declared dependent and the Department of Children and Families subsequently petitioned to terminate the mother's parental rights because the mother (1) failed to comply with the case plan, (2) had abandoned the child, and (3) was a threat to the child's well-being and safety irrespective of the provision of services. The Department stated in its petition that the mother had refused to take her medication as required by the case plan and was a danger to the child.

In December 2016, during the dependency proceeding, the mother was declared incompetent in an unrelated criminal case. The court in that case stated there was a "substantial probability" the mother would regain competence in the "reasonably foreseeable future."

In the dependency case, the trial court continued the original January 2017 trial date as the mother was involuntarily committed, and the trial date was reset for February 2017. A few days before trial, counsel for the mother objected to conducting the termination trial while the mother was incompetent, arguing it violated her due process rights. Counsel requested the trial date be continued until June 2017. The trial court denied the motion. At trial, the mother was non-responsive.

The trial court terminated the mother's parental rights, finding that the mother had refused to take her medication and had otherwise failed to comply with her case plan.[1] The mother appeals.

The mother argues that the trial court violated her due process rights by holding the termination of parental rights trial while she was incompetent. We review the issue of whether the trial court violated the mother's due process rights de novo. *See VMD Fin. Servs. v. CB Loan*

---

[1] In addition, the trial court found the mother had abandoned the child and was a threat to the child's safety. The mother does not appeal the trial court's findings. The trial court also terminated the father's parental rights at the same hearing. We affirmed his termination. *B.S. v. Dep't of Children & Families*, 4D17-932 (Fla. 4th DCA July 19, 2017).

*Purchase Assocs.*, 68 So. 3d 997, 999 (Fla. 4th DCA 2011).

The Due Process Clause of the United States and Florida Constitutions encompasses both substantive and procedural due process. *See M.W. v. Davis*, 756 So. 2d 90, 97 (Fla. 2000). A person's substantive due process rights "protect[] the full panoply of individual rights from unwarranted encroachment by the government." *Id.* (quoting *Dep't of Law Enf't v. Real Prop.*, 588 So. 2d 957, 960 (Fla. 1991)). Procedural due process "serve[s] as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue." *Id.* (quoting *Real Prop.*, 588 So. 2d at 960). Although a parent has a substantive due process right to raise his or her child, the state may interfere with this right if "the State is acting to protect the children from harm." *Beagle v. Beagle*, 678 So. 2d 1271, 1276 (Fla. 1996).

To determine procedural due process rights in a termination of parental rights proceeding,

> the nature of the process due . . . turns on a balancing of the "three distinct factors" specified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.

*Santosky v. Kramer*, 455 U.S. 745, 754 (1982).

As to the first factor, a parent's right to raise his or her child is an important fundamental right. *See N.S.H. v. Fla. Dep't of Children & Family Servs.*, 843 So. 2d 898, 902 (Fla. 2003). However, in termination proceedings, the parent's rights are not the only ones at stake; we must also consider the interests of the child in our analysis. *See id.* "The child, too, has a right to achieve stability in [his] life with parents who will properly care for [him]." *J.E. v. Dep't of Children & Families*, 126 So. 3d 424, 429 (Fla. 4th DCA 2013) (alteration in original) (quoting *D.G. v. Dep't of Children & Families*, 77 So. 3d 201, 210 (Fla. 4th DCA 2011)).

Appellant seeks to analogize termination cases to criminal cases. However, unlike a criminal or a civil commitment case, termination cases do not involve the deprivation of "*physical liberty*." *See N.S.H.*, 843 So. 2d at 902. Consequently, "our supreme court has already determined that [termination] proceedings are not entitled to the protections of a criminal trial, because the procedures and goals in place in child dependency and termination proceedings are different than those for criminal

3

prosecutions." *W.S. v. Dep't of Children & Families*, 31 So. 3d 329, 331 (Fla. 4th DCA 2010) (citing *S.B. v. Dep't of Children & Families*, 851 So. 2d 689, 693 (Fla. 2003)); *see also N.S.H.*, 843 So. 2d at 903 (holding *Anders*[2] protections do not apply to termination proceedings); *C.S. v. Dep't of Children & Families*, 124 So. 3d 978, 979 (Fla. 4th DCA 2013) (stating a trial court may enter a consent judgment where a parent fails to appear at a termination trial). Therefore, while a criminal defendant must be competent, the same is not necessarily true in termination proceedings, which involve not only the parents' rights but also child's rights.

As to the second factor, we must consider the risk of error in holding a termination trial while the parent is incompetent. Although a parent's ability to assist trial counsel and to testify in his or her own defense is an important procedural safeguard, in termination proceedings, unlike most civil cases, a parent is entitled to assistance from counsel and the state must prove the grounds for termination by clear and convincing evidence, thus diminishing the risk of error. *See* §§ 39.807, 39.809, Fla. Stat. (2015).

Finally, we must consider the government's interest. The government has two interests: "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Santosky,* 455 U.S. at 766. The state has a *parens patriae* interest in providing children with a permanent home. *See id.* at 766-67. Additionally, "[a]lthough the State has a significant interest in the finality of both criminal and TPR judgments, the interest in finality is substantially heightened in the TPR context by the very important consideration that must be given to the child's interest in reaching permanency and to the harm that results when permanency is unduly delayed." *J.B. v. Fla. Dep't of Children & Families*, 170 So. 3d 780, 792 (Fla. 2015); *see also* § 39.0136(1), Fla. Stat. (2015) ("The Legislature finds that time is of the essence for establishing permanency for a child in the dependency system."); *C.M. v. Dep't of Children & Family Servs.*, 854 So. 2d 777, 779 (Fla. 4th DCA 2003) ("At all stages of the proceedings, courts are compelled to expedite proceedings to prevent children from languishing in the foster care system. This includes appeals. *See* Fla. R. App. P. 9.146(g). Achieving permanent stability in the child's life is the paramount concern of the judicial process."). Thus, the state's interest favors conducting the termination proceeding expeditiously to avoid further harm to the child.

The government's administrative interest favors conducting the

---

[2] *Anders v. California,* 386 U.S. 738 (1967).

termination trial as well. *See J.B. v. Fla. Dep't of Children & Family Servs.*, 768 So. 2d 1060, 1065-66 (Fla. 2000) ("[Termination of parental rights] proceedings place a tremendous cost and hardship on the State. In response, the Legislature has attempted to resolve this monumental burden by enacting legislation which swiftly moves these cases toward resolution, while at the same time guarding the rights and liberties of the parties involved.").

In weighing these factors, we note that this court has previously concluded that it does not violate a parent's due process rights to adjudicate a child dependent despite a parent's incompetence. *See S.K. v. Dep't of Children & Families*, 959 So. 2d 1209, 1212 (Fla. 4th DCA 2007); *L.M. v. Dep't of Children & Families*, 946 So. 2d 42, 46 (Fla. 4th DCA 2006). Although these cases address adjudications of dependency, as opposed to the permanent deprivation of parental rights, they are nonetheless instructive.

As we stated in *S.K.*, "It makes no sense and is circular to require the parent to become competent in order to proceed with the dependency adjudication, if the incompetency were the very reason why the dependency proceeding was brought in the first place." 959 So. 2d at 1212. In the present case, the mother failed to comply with her case plan and take the medication necessary for her to alleviate her mental health symptoms. It is unreasonable for the child to remain unstable as a result of the state being unable to terminate the mother's parental rights when the state's reason for terminating her parental rights was her previous failure to comply with her mental health treatment.

We conclude that proceeding with the termination proceeding did not violate the mother's right to procedural due process. Although we recognize the significance of the deprivation and the fundamental rights at stake, on balance and under the facts of this case, "those rights must yield to the needs of the children." *L.M.*, 946 So. 2d at 46. The need for finality and stability in the child's life would be jeopardized if we were to require that the mother be competent during a termination trial where there is no assurance that the mother would regain competence and where the mother's mental health issues initiated proceedings.

Our conclusion is consistent with a majority of jurisdictions, which have found that due process does not require a parent to be competent at the time of the termination proceeding. *See In re N.S.E.*, 666 S.E.2d 587, 589 (Ga. Ct. App. 2008); *In re Charles A.*, 856 N.E.2d 569 (Ill. App. Ct. 2006); *In re W.J.S.M.*, 231 S.W.3d 278 (Mo. Ct. App. 2007); *In re M.M.L.*, 393 P.3d 1079 (Nev. 2017); *In re R.M.T.*, 352 S.W.3d 12 (Tex. App. 2011).

5

For example, in *M.M.L.*, the mother suffered from mental illness and, as a result, the child was declared a ward of the court. 393 P.3d at 1080. Subsequently, in an unrelated criminal case, the mother was declared incompetent, and the termination trial proceeded notwithstanding the mother's incompetence. After weighing the interests at stake, the Nevada supreme court held that due process did not require the mother to be competent as the wellbeing of the child was of a paramount concern. *See id.* at 1081-82.

A minority of jurisdictions, however, have placed procedural due process limitations on the power of the state to terminate an incompetent parent's rights. In *In re Alexander V.*, 613 A.2d 780, 785 (Conn. 1992), the Connecticut supreme court held that due process requires a competency hearing prior to terminating a parent's right, and in *State ex rel. Juvenile Department of Multnomah County v. Evjen*, 813 P.2d 1092 (Or. 1991), the parent had a history of mental illness, and two weeks before the termination hearing she was hospitalized due to her mental condition. The Oregon supreme court held the mother had a due process right to be present at the termination hearing.

Both *Alexander* and *Evjen* are distinguishable from the present case. *Alexander* involved a different legal issue from the present case. *Alexander* concerned the issue of whether a competency hearing may be required prior to a termination proceeding. In the present case, however, it is undisputed that the mother was incompetent and had been incompetent for nearly two months. Additionally, under Connecticut law, mental health is not a ground for terminating a parent's rights. *See In re M.M.L.*, 393 P.3d at 1082-83. Although mental health is not a ground under which a parent's rights may be terminated in Florida, "mental illness can indeed undergird a termination of rights." *In re D.H.*, 670 So. 2d 1072, 1072 (Fla. 2d DCA 1996). Finally, *Alexander* contains no discussion of the child's private interests in its analysis. *Evjen* is factually distinguishable as it involved an episode of hospitalization shortly before trial. In the instant case, the mother had been declared incompetent nearly two months before trial.

The mother also argues that the trial court erred in denying her a continuance and that the trial court misconstrued Florida Rule of Juvenile Procedure 8.240. "[A] trial court has broad discretion in granting or denying a continuance." *In re D.S.*, 849 So. 2d 411, 413 (Fla. 2d DCA 2003). Rule 8.240(d)(5) states:

> [P]roceedings may not be continued or extended for more than a total of 60 days for all parties within any 12-month period.

A continuance or extension of time standards beyond 60 days in any 12-month period may be granted only on a finding by the court of extraordinary circumstances and that the continuance or extension of time standards is necessary to preserve the constitutional rights of a party or that there is substantial evidence demonstrating that the child's best interests will be affirmatively harmed without the granting of a continuance or extension of time.

The record demonstrates that the trial court understood the rule and concluded that the mother failed to show "extraordinary circumstances." We cannot say the trial court's finding was an abuse of discretion where the following were present: the mother's mental illness was the underlying reason for initiating dependency proceedings in the first place, the reason for terminating the mother's parental rights was her failure to comply with her mental health treatment, and the mother had been incompetent for nearly two months.

In summary, under the facts of this case, the trial court did not err in proceeding with the mother's termination of parental rights trial. We further conclude that the trial court did not err in denying the mother a continuance.

*Affirmed.*

GERBER, C.J., and CONNER, J., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***