# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 101

**APRIL TERM, A.D. 2025**

**September 16, 2025**

IN THE INTEREST OF SP, MR, JR, and MR, minor children:

IDP,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-25-0035

*Appeal from the District Court of Uinta County*
The Honorable James C. Kaste, Judge

*Representing Appellant:*
Jason C. Gay, Attorney at Law, Green River, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Christina F. McCabe, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General; Callie R. Papoulas, Senior Assistant Attorney General.

*Representing Guardian ad Litem:*
Joseph R. Belcher, Director, Office of Guardian *ad Litem*; Kimberly Skoutary Johnson, Chief Trial and Appellate Counsel.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, JJ., and BUCHANAN, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**BUCHANAN, District Judge**

[¶1]    On May 29, 2024, the State of Wyoming filed a petition against SCP (Mother) and IDP (Father) alleging abuse of their minor children.  Subsequently, the parties entered into a stipulation, which adjudicated the children as neglected children under Wyoming Statute Ann., § 14-3-412 (2025).  After a disposition hearing, the children remained in the legal and physical custody of the Department of Family Services (the Department), and the juvenile court adopted a permanency plan for family reunification with Mother.  This appeal arises from the court's decisions throughout the juvenile court proceedings.  Finding no error, we affirm.

### *ISSUES*

[¶2]    The issues on appeal are as follows:

> I.    Does the juvenile court lose subject matter jurisdiction based on omissions or deficiencies of information in the Neglect Petition, as required by Wyo. Stat. Ann. § 14-3-412(b)(iv)?

> II.    Did the juvenile court's failure to order an evaluation of IDP's competency violate IDP's right to due process?

> III.    Did the juvenile court's determination that IDP was competent to enter into a stipulation under W.R.P.J.C. 7 violate IDP's right to due process?[1]

> IV.    Did the juvenile court err in denying father's legal counsel's motion to withdraw?

> V.    Did the juvenile court's determination to proceed with the Disposition Hearing without IDP present, under the circumstances, violate IDP's right to due process?

### *FACTS*

[¶3]    At all times relevant to these proceedings, Mother and IDP (Father) lived in Evanston, Wyoming, with their minor children, SP, MR (2018), JR, and MR (2021).[2] Father is the biological father of SP and stepfather of MR (2018), JR, and MR (2021). Father is hearing-impaired and, at times, requires the use of an American Sign Language (ASL) interpreter.

---

[1] The Court finds it appropriate to consolidate Father's issues II and III for consideration herein.
[2] The birthdates following MR are used to distinguish between the two minor children with the same initials.

1

[¶4] On May 28, 2024, SP, who was then about five days old, was admitted to Evanston Regional Hospital (the Hospital) due to a brain bleed. A CT scan showed a cerebral hemorrhage, requiring SP to be life-flighted to Primary Children's Hospital in Utah. Concerns for the welfare of SP and the other minor children led law enforcement to take the children into protective custody.

[¶5] On May 29, 2024, the State of Wyoming (the State) filed a petition (the Petition), alleging that the minor children were abused while in the care of Mother and Father. The Petition, signed by the County Attorney, who swore the contents to be reliable and true, specifically alleged that "[p]hysical injury was inflicted on the child, [SP], in the form of a cerebral hemorrhage that initial reports indicate was unlikely caused by accidental trauma[.]" Additionally, the Petition alleged that "imminent danger" was inflicted on the children due to "a substantial risk of physical injury . . . [and] . . . the above-named children have been seriously endangered by their surroundings and immediate custody appears to be necessary[.]" The State also attached a police report to the Petition, which detailed law enforcement's interactions with the parents and medical providers and set forth additional facts describing the event that brought the children to the attention of the juvenile court.

[¶6] That same day, the juvenile court convened a shelter care hearing, at which both parents appeared. A sign language interpreter was present at the hearing to assist Father, who explained that he could read English but it was helpful for him to have a sign language interpreter because he is deaf. Both parents entered denials as to the allegations of abuse and, at their request, the juvenile court appointed legal counsel for each of them. The minor children were placed in the legal and physical custody of the Department pending further proceedings.

[¶7] On June 21, 2024, the juvenile court held an initial hearing, at which the same sign language interpreter appeared to assist Father. Father appeared with legal counsel and was advised of his rights. Father represented that he did not have any diagnosis or disease that made it difficult for him to understand the proceedings; that he understood what was happening; and that he understood the interpreter. At the hearing, Father again entered a denial as to the abuse allegations. An adjudicatory hearing was set for August 23, 2024.

[¶8] On or about August 16, 2024, the juvenile court held a status conference due to Father's hospitalization from a suicide attempt. At the status conference, Father's counsel raised a potential issue of Father's competency. Father's counsel made no formal motion for a competency hearing; however, the court and counsel discussed the matter, and the court continued the adjudicatory hearing for several weeks.

[¶9] At the commencement of the adjudicatory hearing on September 13, 2024, the juvenile court indicated the parties desired to enter into a *Stipulated Adjudication Pursuant to W.R.P.J.C. Rule 7*, which would adjudicate the children as abused children under

2

Wyoming Statute Ann. § 14-3-412. At the hearing, the court explained to Father that he was giving up certain rights, including the right to a hearing, by signing the stipulation. Father acknowledged that he had consulted with his legal counsel, who was present, and that he wished to enter into the stipulation. Upon specific inquiry from the juvenile court as to the voluntariness of his decision, Father confirmed that it was his decision to proceed with the stipulation. At the hearing, the juvenile court determined Father was competent to stipulate to an abuse adjudication and that his stipulation was voluntary.

[¶10] Thereafter, a disposition hearing was set for November 15, 2024. A multi-disciplinary team (MDT) meeting was held on September 30, 2024; the Department created a case plan, which identified family reunification as the permanency plan; and the family was provided with goals to work toward and tasks to complete. Father participated in these events and did not object to the proceedings or the permanency goal.

[¶11] On October 7, 2024, Father's counsel moved to withdraw, citing circumstances affecting his ability to communicate with Father. At the related October 23, 2024 hearing, Father's counsel again expressed concerns regarding his ability to communicate with Father due to the need for an interpreter and Father's intellectual difficulties. After considering counsel's position, the juvenile court orally denied the request to withdraw, and a written order followed on November 15, 2024.

[¶12] On October 21, 2024, the juvenile court notified the parties that Father was incarcerated in Utah. In light thereof and given the pending disposition hearing, the juvenile court attempted to accommodate Father's circumstances by arranging for closed captioning for the hearing, to no avail. Given his incarceration, Father was able to appear only telephonically, which was ineffective given his hearing disability. On November 14, 2024, the day before the scheduled disposition hearing, Father moved to dismiss the Petition, arguing it was untimely. Father also asserted he was "unavailable" due to his incarceration, his inability to obtain an interpreter, and his lack of access to his attorney. The juvenile court determined it was appropriate to proceed with the disposition hearing, at which it denied Father's motion to dismiss, received evidence, considered the parties' positions, and entered a final disposition. After the hearing, which was consistent with the MDT recommendations in which Father participated, the juvenile court ordered that the children remain in the legal and physical custody of the Department, with continuing efforts toward the permanency plan of family reunification. The juvenile court entered its written order on November 24, 2024, and Father timely filed his notice of appeal.

## DISCUSSION

I. **The Juvenile Court Retained Subject Matter Jurisdiction Over the Neglect Proceedings.**

3

[¶13] Father first challenges the juvenile court's subject matter jurisdiction over the proceedings by claiming it erred in failing to require the State's compliance with Wyo. Stat. Ann. § 14-3-412(b)(iv), which requires a neglect petition to include a statement setting forth, with particularity, the facts which bring the child within the provisions of the Child Protection Act.

### STANDARD OF REVIEW

[¶14] Any party may raise the issue of subject matter jurisdiction at any time. *In re DSB*, 2008 WY 15, ¶ 9, 176 P.3d 633, 636 (Wyo. 2008). Because Father did not raise this jurisdictional matter before the juvenile court, this Court resolves the issue by applying the legal principles for jurisdiction in the first instance. *In re JPL*, 2021 WY 94, ¶¶ 16-20, 493 P.3d 174, 179 (Wyo. 2021). To the extent this Court must interpret statutes to determine subject matter jurisdiction, it applies the well-established principles of statutory interpretation. *In re MN*, 2007 WY 189, ¶ 4, 171 P.3d 1077, 1080 (Wyo. 2007).

### DISCUSSION

[¶15] Subject matter jurisdiction for juvenile courts originates in constitutional and statutory law. *In re MFB*, 860 P.2d 1140, 1146 (Wyo. 1993). Wyoming Statute Ann. § 5-8-102 (a)(iii) (2025) grants the juvenile court general jurisdiction over "[a]ny child alleged to be neglected[.]" The Child Protection Act (the Act) governs neglected children, which includes children who have been subjected to abuse. *See* Wyo. Stat. Ann. § 14-3-402(a)(xii)(B), § 14-3-403(a) (2025). The Act requires a prosecutor to initiate neglect proceedings by filing a petition that contains specific requirements. Section 14-3-412, in relevant part, requires:

> (b) The petition shall set forth all jurisdictional facts, including but not limited to:
> (i) The child's name, date of birth and address;
> (ii) The names and addresses of the child's parents, guardian or custodian and the child's spouse, if any;
> (iii) Whether the child is being held in shelter care and if so, the name and address of the facility and the time shelter care commenced;
> (iv) **A statement setting forth with particularity the facts which bring the child within the provisions of this act**; and
> (v) Whether the child is an Indian child as defined in the federal Indian Child Welfare Act or as defined by W.S. 14-6-702(a)(iv) and, if so, a statement setting forth with particularity the notice provided to the appropriate tribe and to any other

4

person or entity entitled to notice under the Wyoming Indian Child Welfare Act.

Wyoming Statute Ann. § 14-3-412(b) (emphasis added). Father asserts that the State failed to comply with the "statement with particularity" requirements of § 14-3-412(b).

[¶16] When interpreting statutes, this Court first looks to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *In re DSB*, ¶ 17, 176 P.3d at 637. If a statute is clear and unambiguous, this Court gives effect to the plain language of the statute without going further into principles of statutory construction. *In re DSB*, ¶ 17, 176 P.3d at 637; *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 20, 452 P.3d 1276, 1282 (Wyo. 2019).

**A.  Failure to comply with § 14-3-412 does not deprive the district court of subject matter jurisdiction.**

[¶17] Concerning the jurisdiction of juvenile courts, we have said:

> "Subject matter jurisdiction for juvenile courts originates in constitutional and statutory law." *In re MFB*, 860 P.2d 1140, 1146 (Wyo. 1993). The Wyoming Constitution authorizes the legislature to "provide for such juvenile delinquency and domestic relations courts as may be needed[.]" Wyo. Const. art. 5, § 29. Wyoming Statute 5-8-102 grants the juvenile court general jurisdiction over "[a]ny minor alleged to be neglected[.]" Wyo. Stat. Ann. § 5-8-102(a)(iii) (LexisNexis 2019). But,
>
> > Juvenile courts are courts of limited jurisdiction. Article 5, section 29 of the Wyoming Constitution delegates authority to the legislature to provide for juvenile delinquency courts that "shall have such jurisdiction as the legislature may by law provide." Thus, juvenile courts are the creation of the legislature and have powers only as expressly conferred by the legislature.

*In re BG*, 2019 WY 116, ¶ 7, 451 P.3d 1161, 1163 (Wyo. 2019) (quoting *In re WJH*, 2001 WY 54, ¶ 30, 24 P.3d 1147, 1156 (Wyo. 2001)).

[¶18] The threshold question in the analysis of Father's assertion that the juvenile court's subject matter jurisdiction is dependent on compliance with the provisions of Wyo. Stat. Ann. § 14-3-412 is whether the legislature included statutory sanctions in the case of non-compliance. We have held that where a statute imposes no sanctions for failure to abide

5

by its requirements, "it would require an unequivocal expression from the legislature for a violation of the statute's language to result in a lack of subject matter jurisdiction." *BG*, ¶ 10, 451 P.3d at 1164 (quoting *In re MFB*, 860 P.2d at 1149). The language used by the legislature in § 14-3-412 does not include any sanction for omissions or perceived deficiencies in the information required under § 14-3-412(b)(iv). Therefore, there can be no loss of subject matter jurisdiction.

## B. The requirement of a particularized statement in § 14-3-412(b)(iv) was met.

[¶19] The purpose of a pleading, as evidenced by these statutory requirements, is to give notice to the opposing party so that they may properly defend it. *Macy v. Macy*, 714 P.2d 774, 782 (Wyo. 1986). In that respect, § 14-3-412 unambiguously states a petition must set forth a "statement" with "particularity" that explains why the children fall within the provisions of the Act. *Id.* A "statement" is the act of expressing something in words; either spoken or written, to inform people about facts, opinions, or intentions. *Statement*, Black's Law Dictionary (12th ed. 2024). "Particularity" is defined as "1. The quality, state, or condition of being both reasonably detailed and exact[.]" *Particularity*, Black's Law Dictionary (12th ed. 2024).

[¶20] Here, though imperfect, the Petition provided sufficient and reasonably detailed information to provide Father with notice of the allegations against him. It referenced SP's physical injuries, including the cerebral hemorrhage, and indicated the presence of imminent danger to the minor children due to a substantial risk of physical injury. The police report, which was attached to the Petition, provided additional details with respect to the initiation of the juvenile court proceedings and the reasons therefore, and the County Attorney verified the Petition in its entirety. *See* § 14-3-412(a). Overall, the Petition sufficiently put Father on notice of allegations of child abuse of the minor children at his and/or Mother's hands and complied with the statutory requirements. The juvenile court had jurisdiction over the subject matter identified in the Petition.

## II. The Juvenile Court Did Not Violate Father's Due Process Rights By Failing To Order A Competency Evaluation.

[¶21] Father next contends the juvenile court erred in failing to order a competency evaluation and by finding him competent in the absence of such an evaluation, before accepting his stipulation as to an adjudication of neglect of the minor children.

### STANDARD OF REVIEW

[¶22] "The question of whether an individual was afforded due process is one of law, for which our review is *de novo*." *Interest of VS*, 2018 WY 119, ¶ 25, 429 P.3d 14, 21 (Wyo. 2018) (citing *ST v. State*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017)). The party claiming an infringement of his due process rights has the burden of demonstrating both

that he has a protected interest and that such interest has been affected in an impermissible way. "The question is whether there has been a denial of fundamental fairness." *In re L-MHB*, 2017 WY 110, ¶ 25, 401 P.3d 949, 958 (Wyo. 2017) (citation omitted).

## *DISCUSSION*

[¶23]  Father argues his competency was a concern throughout the neglect proceedings[3] and, as such, the juvenile court should have ordered a competency evaluation before accepting his entry into a stipulation of juvenile neglect, even without Father having filed a formal request. Father claims the juvenile court deprived him of his right to due process by not ordering a competency evaluation.

**A.     Father's due process rights were not violated, as a parent has no due process right to competency or to a competency evaluation in child neglect proceedings.**

[¶ 24] Father asserts that his due process protections should encompass the right to a competency evaluation and, arguably, a restoration of competency, during juvenile neglect proceedings.  In the context of due process, this Court has recognized that,

> [t]he government may not deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V; XIV, § 1. *See also,* Wyo. Const. art. 1, § 6. "The liberty of a parent to the care, custody and control of [her] child is a fundamental right that resides first in the parent." Wyo. Stat. Ann. § 14-2-206(a) (LexisNexis 2019). *See also, RA v. State (In re AA),* 2021 WY 18, ¶ 11, 479 P.3d 1252, 1256 (Wyo. 2021) ("[t]he right of familial association is fundamental") (citing *Clark v. Dep't of Family Servs. (In re GGMC),* 2020 WY 50, ¶ 22, 460 P.3d 1138, 1145 (Wyo. 2020); *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010); and *TF v. State, Dep't of Family Servs. (In re Adoption of CF),* 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005)).

*Matter of TJH*, ¶ 9, 485 P.3d at 412*; see also Matter of M.M.L., Jr.*, 393 P.3d 1079, 1081-82 (Nev. 2017);  *Santosky v. Kramer*, 455 U.S. 745 (1982); *A.M. v. Dep't of Child. & Fams.*, 223 So.3d 312, 315-18 (Fla. Dist. Ct. App. 2017).

---

[3] Father mentions that, in a companion criminal case regarding the abuse allegations, the district court ordered a competency evaluation. Though that may be true, the two cases are separate and independent. *See Brown v. State*, 2017 WY 45, ¶ 13, 393 P.3d 1265, 1271 (Wyo. 2017) ("these are separate courts operating under different laws and procedures.").

[¶25] "Procedural due process requires the government to provide a parent with reasonable notice and a meaningful opportunity to be heard before interfering with his fundamental right to familial association." *Int. of AA*, 2021 WY 18, ¶ 15, 479 P.3d 1252, 1257 (Wyo. 2021) (citing *JA v. State, Dep't of Family Servs. (In re DSB),* 2008 WY 15, ¶ 27, 176 P.3d 633, 639 (Wyo. 2008); *DH v. Dep't of Family Servs. (In re "H" Children),* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003)). The required process varies depending upon "the nature of the proceeding and the interests involved." *KC v. State (In re GC),* 2015 WY 73, ¶ 32, 351 P.3d 236, 245 (Wyo. 2015); *Matter of TJH*, ¶ 10, 485 P.3d at 412.

[¶26] In making his argument that due process protections in child neglect proceedings include a parent's right to a competency evaluation, Father seeks to analogize this matter to criminal cases. In criminal court, it has "long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *see also Pate v. Robinson,* 383 U.S. 375, 378 (1966). Indeed, this Court consistently has recognized that "mental competency to stand trial is an element of the due process right to a fair trial." *Fletcher v. State,* 2010 WY 167, ¶ 13, 245 P.3d 327, 331 (Wyo. 2010); *Loomer v. State,* 768 P.2d 1042, 1045 (Wyo. 1989); *see also SWM v. State*, 2013 WY 49, ¶¶ 12-13, 299 P.3d 673, 676–77 (Wyo. 2013) (addressing due process rights of juveniles in delinquency matters). Thus, criminal cases require certain constitutional due process protections due to their nature and potential legal consequences, including the deprivation of liberty.

[¶27] In addition, this Court has concluded that a child in juvenile court delinquency proceedings has a due process right not to proceed with the adjudication of his delinquent status unless he is competent. *See SWM v. State*, 2013 WY 49, 299 P.3d 673 (Wyo. 2013). That conclusion is based, in part, on the purpose of the Juvenile Justice Act, under which delinquency proceedings fall, which seeks not only to protect the best interests of the child but also to protect the public and public safety. *See* Wyo. Stat. Ann. § 14-6-201(c). The Juvenile Justice Act promotes the concept of punishment for criminal acts while recognizing and distinguishing the behavior of children who have been victimized or have disabilities. *See id.* Considering those goals, this Court has opined:

> The Wyoming Juvenile Justice Act and our decisions recognize that children in juvenile court have due process rights. The right to counsel is of little value to a juvenile if he is incompetent to assist that counsel in presenting a defense. Similarly, the right to notice of the charges is futile if the juvenile is not competent to comprehend them. A juvenile's recognized due process rights are pointless if the child is not competent to exercise them. We therefore hold that a child in

juvenile court has a due process right not to proceed with the adjudication of his delinquent status unless he is competent.

*SWM v. State*, 2013 WY 49, ¶ 17, 299 P.3d 673, 678 (Wyo. 2013). Thus, both juvenile delinquency cases (under the Juvenile Justice Act) and adult criminal cases (under Title 7 of the Wyoming Statutes) have applicable statutes that outline the necessary procedures to follow when competency is potentially at issue. *See* Wyo. Stat. Ann. §§ 14-6-219 and 7-11-303.

[¶28] However, the Act does not contain such requirements, nor does it outline any procedure requiring a parent to be competent for an abuse/neglect case to proceed. "The Child Protection Act [] establishes procedures for protecting the fundamental right of familial association while guarding the health and safety of children." *Int. of: AA*, 2021 WY 18, ¶ 16, 479 P.3d 1252, 1257 (Wyo. 2021) (citing Wyo. Stat. Ann. §§ 14-3-401- 441 (LexisNexis 2019)). A parent's right to competence, or a competency evaluation, is notably absent from the statutory procedures required in a child protection case. *Compare* Wyo. Stat. Ann. §§ 14-3-401 to 14-3-441 *generally with In re SWM*, 2013 WY 49, 299 P.3d 673 (Wyo. 2013). In Wyoming, there is no authority requiring a juvenile court to order a competency evaluation for a parent or to wait for a parent in a juvenile neglect case to gain (or regain) competence before proceeding to adjudication. A review of the goals of the Act provides a solid basis for this distinction: In contrast to delinquency and criminal proceedings, the Act, under which Father's neglect proceedings fall, has a distinguishable purpose:

> [T]o protect the best interest of the child, to further offer protective services when necessary in order to prevent any harm to the child or any other children living in the home, to protect children from abuse or neglect which jeopardize their health or welfare, to stabilize the home environment, to preserve family life whenever possible and to provide permanency for the child in appropriate circumstances. The child's health, safety and welfare shall be of paramount concern in implementing and enforcing this article.

Wyo. Stat. Ann. § 14-3-201(a). The requirement that a parent be competent for neglect proceedings to proceed is contrary to the purposes of the Act, where the State intervenes to protect a child who has been alleged to be "abused, abandoned, or neglected."[4] *In re GC*,

---

[4] Indeed, there is merit to the necessity for such cases to proceed even in the absence of a parent's competence. *See generally* Wyo. Stat. Ann. §§ 14-3-401 to 14-3-441; *In re GC*, 2015 WY 73, ¶ 19, 351 P.3d 236, 242.

2015 WY 73, ¶ 19, 351 P.3d 236, 242 (Wyo. 2015) (quoting Wyo. Stat. Ann. §§ 14-3-401 to 14-3-441).  In abuse/neglect proceedings, children's health, safety, and welfare remain of paramount concern, a priority that stands in stark juxtaposition against a required suspension of proceedings while a competency evaluation for a parent is pending.  *See In re SO*, 2016 WY 99, ¶ 10, 382 P.3d 51, 53 (Wyo. 2016) (citing Wyo. Stat. Ann. § 14-3-201).

[¶29]  Keeping these principles in mind, this Court notes that, in *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03 (1976), the United States Supreme Court established the test for determining whether a particular procedure (or lack thereof) violates the litigant's due process rights.  *See BSC v. Natrona Cnty. Dep't of Family Servs. (In re CC),* 2004 WY 167, ¶ 17, 102 P.3d 890, 895 (Wyo. 2004) (when there is no precedent mandating a certain procedure, "the factors identified in [*Mathews*] must be evaluated in determining whether due process [was given] in a particular case").  Under the *Mathews* test, a court is required to balance several factors to determine whether the litigant received due process:  "(1) the nature of 'the private interest . . . affected,' (2) the comparative 'risk' of an 'erroneous deprivation' of that interest with and without 'additional or substitute procedural safeguards,' and (3) the nature and magnitude of any countervailing interest in not providing 'additional or substitute procedural requirement[s].'" *Turner v. Rogers,* 564 U.S. 431, 444-45, 131 S.Ct. 2507 (2011),  (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903).  "Stated more plainly, "[t]hree elements should be taken into account: 'the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions."  *Matter of TJH*, ¶ 16, 485 P.3d at 413–14 (internal quotations omitted).

[¶30]  Here, as to the first *Mathews* factor, this Court begins with the sound premise that the right of familial association is fundamental.  *See Matter of NRAE*, 2020 WY 121, ¶ 13, 472 P.3d 374, 378 (Wyo. 2020).  "The liberty of a parent to the care, custody and control of [his] child is a fundamental right that resides first in the parent."  *Interest of AA*, 2021 WY 18, ¶ 11, 479 P. 3d 1252, 1256-57 (Wyo. 2021) (internal citations omitted) (quoting Wyo. Stat. Ann. § 14-2-206(a)); *see also Clark v. Dep't of Family Servs. (In re GGMC)*, 2020 WY 50, ¶ 22, 460 P.3d 1138, 1145 (Wyo. 2020); *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010); *TF v. State, Dep't of Family Servs. (In re Adoption of CF)*, 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005); *Troxel v. Granville*, 530 U.S. 57, 65 (2000), *Santosky v. Kramer*, 455 U.S. 745, 760 (1982).  Parents have a strong personal stake in neglect proceedings given the potential risks associated with their fundamental rights.  *See generally Matter of TJH*, ¶ 17, 485 P.3d at 414.  However, the parent is not the only party with a private interest at stake.  "The child also has a significant interest in the accuracy and justice of the decision, and in the timeliness of a decision." *Matter of TJH*, ¶ 17, 485 P.3d at 414; *see also CL v. Wyo. Dep't of Family Servs. (In re AD),* 2007 WY 23, ¶¶ 31-32, 151 P.3d 1102, 1109-10 (Wyo. 2007) (children have the right to obtain stability and permanency in their family relationships within a reasonable amount of time); *A.M. v. Dep't of Children & Fams.,* 223 So.3d 312, 315–18

(Fla. Dist. Ct. App. 2017). Certainly, Father has a significant and recognized interest in parenting the children.

[¶31] The second *Mathews* factor requires this Court to consider the risk of error created by holding a neglect proceeding without a competency evaluation and/or while Father may have been incompetent. Although a parent's ability to assist trial counsel and to testify is an important procedural safeguard, in neglect proceedings, unlike most civil cases, a parent is entitled to assistance from counsel, thus diminishing the risk of error. *See A.M.*, 223 So.3d at 315–18. Here, Father was represented by counsel throughout the proceedings. He had the assistance of counsel throughout the adjudication and final disposition hearing. These protections, along with the State's burden of proof, were adequate to guard against the risk of error in the proceedings. *See A.M.*, 223 So.3d at 316. Father received notice and a fair and full opportunity to be heard, even considering competency concerns. *See Int. of J.P.-L.*, 592 S.W.3d at 587-88. Notably, Father did not formally request a competency evaluation, nor did he ultimately contest his competency during the entry of the adjudication of neglect. He stated that he understood his rights, was not under the influence of any substance, did not have a mental condition that would affect his ability to enter into the agreement, and desired to enter into the stipulation. Even if a parent's competency was a legitimate issue, a juvenile court cannot protect a child's best interests by delaying adjudication, where there is often no indication that the parent will regain competence at any given date, and certainly not within the statutory deadlines set for neglect proceedings. *See id.* "The needs of the child are not best served by a legal process that fosters delay and unrestrained second-guessing." *Int. of J.P.-L.*, 592 S.W.3d at 587–88.

[¶32] Finally, the third *Mathews* factor requires a consideration of the government's interests, which generally parallel the child's best interests in abuse/neglect cases. The State has a substantial interest in ensuring the result of neglect proceedings is consistent with the child's best interests after a child has been determined to have been abused or neglected. "[T]he government has 'an urgent interest in the welfare of the child, [and, therefore,] shares the parent's interest in an accurate and just decision.'" *In re CC*, 2004 WY 167, ¶ 18, 102 P.3d 890, 895 (Wyo. 2004) (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S. Ct. 2153 (1981). The State also has an interest in an economical and timely resolution of the matter. *See Matter of TJH*, ¶ 20, 485 P.3d at 415. In the context of termination proceedings, by analogy, it has been recognized that

> [t]he government has two interests: "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Santosky*, 455 U.S. at 766, 102 S.Ct. 1388. The state has a *parens patriae* interest in providing children with a permanent home. *See id.* at 766–67, 102 S.Ct. 1388. Additionally, "[a]lthough the State has a significant

11

interest in the finality of both criminal and TPR judgments, the interest in finality is substantially heightened in the TPR context by the very important consideration that must be given to the child's interest in reaching permanency and to the harm that results when permanency is unduly delayed." *J.B. v. Fla. Dep't of Children & Families*, 170 So.3d 780, 792 (Fla. 2015); *see also* § 39.0136(1), Fla. Stat. (2015) ("The Legislature finds that time is of the essence for establishing permanency for a child in the dependency system."); *C.M. v. Dep't of Children & Family Servs.*, 854 So.2d 777, 779 (Fla. 4th DCA 2003) ("At all stages of the proceedings, courts are compelled to expedite proceedings to prevent children from languishing in the foster care system. This includes appeals. *See* Fla. R. App. P. 9.146(g). Achieving permanent stability in the child's life is the paramount concern of the judicial process."). Thus, the state's interest favors conducting the termination proceeding expeditiously to avoid further harm to the child.

*A.M.*, 223 So.3d at 315–18. The same conclusion applies with respect to neglect proceedings, where the State has a significant interest in the health, safety, and welfare of the minor children. Proceeding efficiently to a resolution in these cases supports not only the best interests of the child by achieving stability and permanency, but it also addresses the costs and hardships placed upon the State throughout child protection proceedings.

[¶33] Due to the uncertainties associated with competency and mental health, it necessarily remains unknown at the time of child protection proceedings how long it may take for a parent to be competent, if ever. And, indeed, a competency evaluation for a parent, and the restoration of the parent's competency, would result in a delay in proceedings that affects the stability and permanency of the child. A child clearly has a significant interest in an accurate, just, prompt and final permanency decision. A child's permanency and stability are of the utmost importance, and the child should not be denied stability while waiting for the parent to address the issues that may well have led to the child's removal. The rights of the child to a stable future with a loving family must be paramount, otherwise, the child's development is compromised for the sake of the parents. And, the State "similarly had a significant interest in a prompt and final permanency decision for Child." *Matter of TJH*, ¶ 21, 485 P.3d at 415. *See SD v. Carbon Cnty. Dep't of Family Servs. (In re SED),* 2002 WY 168, ¶ 27, 57 P.3d 1235, 1241 (Wyo. 2002) ("'When the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield.'") (quoting *Matter of MLM*, 682 P.2d 982, 990 (Wyo. 1984)): *see also In re Hill,* 2020 WL 506685, *2 (Mich. Ct. App. Jan. 30, 2020) (unpublished) (incarcerated parent's "interest in being physically present or participating by video conference [at the termination hearing] does not outweigh the state's strong interest in adjudicating child protective proceedings in a timely and efficient manner"). The

12

continued postponement of neglect proceedings for a competency evaluation or until the parent can be restored to fitness, would further delay children's interests in finding a permanent home. Such indefinite postponement frustrates the State's *parens patriae* interests. Thus, the State's and the minor children's best interests in having a stable and secure home are paramount to Father's interests in any further delay in the neglect proceedings.

[¶34] In sum, after considering the *Mathews* factors, this Court concludes that a parent has no due process right to a competency evaluation, or to be restored to competency, in neglect proceedings under the Act. This conclusion is consistent with the analogous decisions of the majority[5] of other jurisdictions that have held that a parent's due process rights are not violated when parental rights are terminated while a parent remains incompetent. *See People in Int. of L.N.*, 2022 S.D. 8, ¶¶ 42-51, 970 N.W.2d 531, 544–47 (S.D. 2022); *A.M.*, 223 So.3d at 317 (citing cases from five states that have held parental incompetency at the time of the termination proceeding is not a due process violation); *Matter of M.M.L., Jr.*, 133 Nev. 147, 150, 393 P.3d 1079, 1082-83 (Nev. 2017) (denying a continuance where the contesting parent was incompetent because the child's interest was of paramount concern); *In re R.M.T.*, 352 S.W.3d 12, 21 (Tex. App. 2011) (finding the child's need for permanency could not be accommodated without proceeding while the parent was incompetent); *In re Charles A.*, 856 N.E.2d 569, 573 (Ill. App. 2006) ("The postponement of termination proceedings, for a fitness hearing or until the respondent could be restored to fitness, would further delay a child's interest in finding a permanent home."); *In re N.S.E.*, 293 Ga. App. 171, 666 S.E.2d 587, 589 (Ga. App. 2008); *In re W.J.S.M.*, 231 S.W.3d 278, 283 (Mo. Ct. App. 2007); *In re M.M.L.*, 393 P.3d 1079 (Nev. 2017); *A.M.*, 223 So. 3d at 315–18; *S.K. v. Dep't of Children & Families*, 959 So.2d 1209, 1212 (Fla. 4th DCA 2007); *L.M. v. Dep't of Children & Families*, 946 So.2d 42, 46 (Fla. 4th DCA 2006); *see also generally* Fatma E. Marouf, *Incompetent but Deportable: The Case for a Right to Mental Competence in Removal Proceedings*, 65 Hastings L.J. 929, 949 (2014). This court also concludes, based upon the foregoing analysis, that Father was given proper due process throughout these proceedings.

### III. The Juvenile Court Did Not Err When It Denied Father's Legal Counsel's Motion To Withdraw.

---

[5] In the context of termination cases, a minority of courts have held a parent's due process rights may be violated when proceeding in light of the parent's incompetency or in the absence of a competency evaluation. *See, e.g.*, *State ex rel. Juvenile Dep't v. Evjen*, 107 Or. App. 659, 813 P.2d 1092, 1094 (Or. App. 1991). For example, the Connecticut Supreme Court has found that a district court violates a parent's due process rights when it fails to hold a pretrial competency hearing upon request. *See In re Alexander V.*, 223 Conn. 557, 613 A.2d 780, 785 (Conn. 1992); *but see In re Kaleb H.*, 306 Conn. 22, 48 A.3d 631, 640 (Conn. 2012) (holding that a competency hearing was not necessary when the record did not contain any facts to demonstrate the parent would be incompetent to stand trial).

[¶35] Father next asserts that the juvenile court violated his right to counsel by denying his legal counsel's motion to withdraw. He specifically argues this denial deprived him of effective assistance of counsel under Article 1, Section 10 of the Wyoming Constitution and Amendment VI to the United States Constitution.

## *STANDARD OF REVIEW*

[¶36] "Issues concerning the withdrawal of counsel . . . are matters which are left to the sound discretion of the trial court and will not be upset on appeal absent a demonstrated abuse of discretion." *Nw. Bldg. Co. v. Nw. Distrib. Co.*, 2012 WY 113, ¶ 10, 285 P.3d 239, 242 (Wyo. 2012) (brackets and citation omitted). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Sims v. Day*, 2004 WY 124, ¶ 9, 99 P.3d 964, 968 (Wyo. 2004) (internal citations omitted); *see also Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P. 3d 836, 838 (Wyo. 2003); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). A court abuses its discretion if "it acts in a manner which exceeds the bounds of reason under the circumstances." *Int. of JN*, 2024 WY 105, ¶ 24, 556 P.3d 748, 755 (Wyo. 2024) (citations omitted). This Court gives considerable deference to the juvenile court and, if the juvenile court's conclusion is within the bounds of reason, this Court will not reverse. *See In re SW*, 2021 WY 81, ¶ 18, 491 P.3d 264, 269-70 (Wyo. 2021).

## *DISCUSSION*

### A.     Father has provided no relevant authority and no cogent argument to support his assertion of a constitutional right to effective assistance of counsel in these proceedings.

[¶37]   Under the Rules of Procedure for Juvenile Courts, "[the] Respondent is entitled to be represented in all proceedings in Juvenile Court by counsel retained by him, his parent, or by counsel appointed pursuant to this Rule." W.R.P.J.C. 5(a). Father was represented throughout the juvenile court proceedings by court-appointed counsel. Father argues the juvenile court's denial of his legal counsel's motion to withdraw violated his right to effective assistance of counsel under both the United States and Wyoming Constitutions.

[¶38]   However, the constitutional provisions to which Father cites, Wyo. Const. art. 1 § 10 and U.S. Const. amend. VI, apply only to criminal proceedings. Further, abuse/neglect cases are proceedings in equity and, thus, do not fall under the criminal statutes. *See* Wyo. Stat. Ann. § 14-3-436 (2025). Father has not provided any authority or cogent argument to suggest that a right to effective assistance of counsel applies in civil or juvenile neglect cases, and the Court will not address whether such a right exists under either constitution. *Matter of RVR*, ¶ 24, 520 P.3d at 1164 (Wyo. 2022).

14

**B.** **The juvenile court did not abuse its discretion in denying Father's legal counsel's motion to withdraw under the circumstances as presented to the court.**

[¶39]  The Rules of Procedure for Juvenile Courts govern practice and procedure in the juvenile courts but do not address attorney withdrawal from a case.  *See* W.R.P.J.C 1(b). District court judges act as the juvenile court judges in their respective districts. *See* Wyo. Stat. Ann. § 5-8-101(a) (2025).  The Uniform Rules for District Courts of the State of Wyoming apply to all district court judges, which necessarily includes the juvenile courts. *See* Wyo. Stat. Ann. § 5-3-102(b) (2025).  Under Rule 102 of the Uniform Rules for District Courts, counsel may only withdraw from a case with a court order.  *See* U.R.D.C. 102(c). A court will approve withdrawal only if: (1) counsel has obtained substitute counsel; (2) the client has received notice of counsel's withdrawal and expressed a desire to proceed pro se; or (3) extraordinary circumstances exist.  *See* U.R.D.C. 102.  Rule 1.16 of the Wyoming Rules of Professional Conduct requires that a lawyer comply with applicable law requiring a tribunal's permission when terminating a representation. *See* Wyo. R. Pro. Conduct 1.16(c).  Rule 1.16 also provides examples of when counsel may withdraw from representing a client, including when a client renders the representation unreasonably difficult. *Id.*

[¶40]  Here, Father's counsel's request to withdraw failed to comply with Rule 102.  First, Father's counsel made no representations to the juvenile court that he had secured substitute counsel for Father. Second, counsel failed to provide Father with notice that he was seeking to withdraw or serve him with the motion. In fact, the juvenile court expressed concern that Father was not served with the motion and was unaware of his attorney's intent. Thus, Father did not have an opportunity to decide to proceed *pro se* and previously had requested that counsel be appointed.  Third, counsel failed to demonstrate the existence of extraordinary circumstances sufficient to warrant withdrawal.

[¶41]  "Extraordinary circumstances" may support withdrawal of counsel without written substitution of other counsel, including, for example, circumstances such as a client refusing to keep appointments and return telephone messages, declining to execute documents that were subject to an earlier agreement, not reasonably cooperating and obstructing the orderly progression of the case, refusing to complete acts required by court order, and not cooperating with discovery requests. *See Byrd v. Mahaffey*, 2003 WY 137, ¶¶ 15-16, 78 P.3d 671, 675-76 (Wyo. 2003).  Conversely, counsel cannot establish extraordinary circumstances by simply stating that the client's lack of communication or responsiveness has rendered the representation unreasonably difficult. *See Nw. Bldg. Co., LLC*, ¶ 14, 285 P.3d at 243 (citing *Sims v. Day*, 2004 WY 124, ¶¶ 11-13, 99 P.3d 964, 969 (Wyo. 2004)).  Here, Father's counsel asserted that extraordinary circumstances existed to support his withdrawal and specifically claimed his challenge in representing Father stemmed from difficulty securing and working with a sign language interpreter and intellectual difficulties on Father's part. But counsel did not demonstrate Father's actions

made him an unreasonably difficult client under Rule 1.16(b)(6) of the Wyoming Rules of Professional Conduct. Rather, from the inception of the matter, the juvenile court was aware Father had a hearing impairment and required assistance from someone knowledgeable in sign language. The court was able to accommodate these needs, as was Father's legal counsel. The court expressed its willingness to provide an interpreter to counsel, if necessary, and reasoned that any attorney representing Father would have similar communication difficulties due to Father's disability. Ultimately, the juvenile court found that, under Rule 1.16(b)(6), Father was not intentionally difficult and that, under Rule 1.02, if Father's counsel were to withdraw, the juvenile court would need to appoint another attorney who would be similarly situated. The juvenile court correctly denied the motion to withdraw, and this Court cannot conclude that its decision was an abuse of discretion under the circumstances. The juvenile court did not err in denying counsel's motion to withdraw, as counsel did not identify substitute counsel, did not provide notice to Father so he could agree to proceed *pro se*, and failed to demonstrate that extraordinary circumstances existed.

### IV. Under the Circumstances, The Juvenile Court Did Not Violate Father's Due Process Rights By Proceeding To a Disposition Hearing Without His Presence.

[¶42] Finally, Father contends that the juvenile court violated his right to due process by holding the disposition hearing without his presence, thereby depriving him of the ability to participate meaningfully in the hearing.

### STANDARD OF REVIEW

[¶43] When a parent claims a violation of due process, this Court has stated "[t]he question of whether an individual was afforded due process is one of law subject to de novo review." *In re TJH*, ¶ 10, P.3d at 412 (citing *In re AA*, 2021 WY 18, ¶ 9, 479 P.3d 1252, 1256 (Wyo. 2021); *In re DT*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017); *Verheydt*, ¶ 20, 295 P.3d at 1250).

[¶44] The question of whether an individual was afforded constitutional due process is one of law, which this Court reviews *de novo*. *Int. of RR*, 2021 WY 85, ¶ 88, 492 P.3d 246, 268 (Wyo. 2021).

> The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness.

*In Int. of ECH*, 2018 WY 83, ¶ 43, 423 P.3d 295, 307 (Wyo. 2018). If an error occurred, the finding of such error does not automatically necessitate reversal. *Lewis v. State*, 2002 WY 92, ¶ 26, 48 P.3d 1063, 1071 (Wyo. 2002). Whether a constitutional error was harmless is reviewed *de novo*. *Id.*

## *DISCUSSION*

[¶45] Father contends his due process rights were violated because the juvenile court failed to secure his presence at the disposition hearing. More specifically, Father was unable to participate in the disposition hearing because, due to Father's incarceration, only his telephonic presence could be arranged but given Father's hearing impairment, that presence was ineffective.

[¶46] Applicable Wyoming law requires that "[t]he court shall ensure the presence at any hearing of the parents, guardian or custodian of any child subject to the proceedings under this act." Wyo. Stat. Ann. § 14-3-415(a) (2025). This Court has not opined on the extent of the juvenile court's obligation to ensure a parent's presence under § 14-3-415(a). *In re RR*, 2021 WY 85, ¶ 57, 492 P.3d 246, 262 (Wyo. 2021); *In re VS*, 2018 WY 119, ¶ 32, 429 P.3d 14, 23 (Wyo. 2018). However, this Court has recognized that, "[t]he legislative intent of the 'presence' requirement was in large part to preserve the due process rights of the child's parent, guardian, or custodian." *In Int. of ECH*, ¶ 45, 423 P.3d at 308.

[¶47] Thus, in considering Father's due process rights, this Court again considers the *Mathews* factors, which pertain equally to Father's argument that his presence is required for the disposition hearing and the delay that would be caused thereby. Applying those *Mathews* factors and recognizing that parents enjoy a fundamental right to familial association and those rights bring certain due process protections, *see In re MN*, ¶ 7, 171 P.3d at 1081; *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923), this Court must reflect on the requirements of due process, notice, and the opportunity to be heard, which are to be appropriate to the nature of the case and proceedings. *See KC*, ¶ 16, 351 P.3d at 24; *In re TJH*, ¶ 10, 485 P.3d at 412; and *Verheydt*, ¶ 20, 295 P.3d at 1250. Indeed, not all hearings are the same, and as such, "[t]he required process varies depending upon the nature of the proceeding and the interests involved." *Int. of VS*, ¶ 28, 429 P.3d at 22 (internal quotation omitted).

[¶48] While due process of law includes the right of a parent to be present at child protection proceedings, that right is not absolute. *Matter of Jaylin B.*, 221 A.D.3d 1418, 1419, 200 N.Y.S.3d 816, 819 (N.Y. 2023), *leave to appeal denied*, 41 N.Y.3d 905, 232 N.E.3d 763 (N.Y. 2024). In the context of the Act, this Court has already noted that

> [a] majority of states have held that the extent of an incarcerated parent's right to be present at a termination hearing should be determined in the discretion of the trial court,

17

> "while finding that representation by counsel and the opportunity to appear [in some form] are the two key components . . . ." *In re C.G.*, 954 N.E.2d 910, 921 (Ind. 2011) (citing cases). The process due "must be evaluated in light of the process received throughout the proceedings and must be proportionate to the issues at stake." *KC*, 2015 WY 73, ¶ 39, 351 P.3d at 246. Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [It] is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.E.d.2d 18 (1976)).

*In Int. of ECH*, ¶¶ 45-46, 423 P.3d at 308–09. "*In re ECH* clearly indicates an incarcerated parent's due process right to be heard may be protected by allowing appearance at termination hearings by some means other than in person." *Matter of TJH*, ¶ 14, 485 P.3d at 413. The question is whether Father's absence from the disposition hearing is permissible under the circumstances.

[¶49]   While a parent's presence (telephonically or otherwise) in dispositional proceedings is optimal, this Court concludes that due process does not necessarily require as much.

> [The Court is] mindful that the "privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow." *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658 (internal quotation marks and citation omitted). A parent has a compelling right to be present only "if his [or her] presence would contribute to the fairness of the procedure." *Id.* Thus, a fundamental right to be present exists only when prejudice to a parent's liberty interest might be avoided if the parent is present or where their presence might be beneficial or useful to their defense. *See id.; Coleman,* 399 U.S. at 9, 90 S.Ct. 1999.

*State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶ 33, 136 N.M. 53, 64, 94 P.3d 796, 807 (N.M. 2004). "[I]n light of a juvenile court's relative inability to compel an out-of-state correctional facility to allow an incarcerated parent to participate" in a hearing, it is best left to the "juvenile courts' discretion to determine how an incarcerated parent may meaningfully participate in the hearing[.]" *In re Taeson D.*, 305 Neb. 279, 286–87, 939 N.W.2d 832, 838 (Neb. 2020); *see also In re Stephen Tyler R.*, 213 W. Va. 725, 732, 584 S.E.2d 581, 588 (Va. 2003). Under such circumstances, the presence of legal counsel may be sufficient. A parent may well receive "meaningful access to the courts through his appointed counsel. In dependency cases, as in other civil cases, personal

appearance by a party is not essential; appearance by an attorney is sufficient and equally effective[.]" *In re Jesusa V.*, 32 Cal. 4th 588, 602, 85 P.3d 2, 10 (Cal. 2004).

[¶50] Here, the unique circumstances of this disposition hearing must be considered. After the juvenile court adjudicated the children neglected, pursuant to the stipulation of the parties, the court proceeded to a disposition hearing under Wyo. Stat. Ann. § 14-3-426(c) (2025). The juvenile court made significant efforts to arrange for Father's appearance but was thwarted in its efforts by Father's out-of-state incarceration. The court made every effort to ensure the presence of Father and, ultimately, permitted him to appear by telephone. Given Father's hearing impairment, that option was ineffective. Although Father was unable to participate personally, he had long been aware of the scheduled hearing and had participated in all prior hearings and case proceedings. Father had attended the prior MDT, knew the recommendations of the team and concurred with them, and was aware of the positions to be presented to the court at the disposition hearing. Further, Father's legal counsel was present in the courtroom and able to exercise Father's constitutional rights, thereby affording Father due process. *In interest of DT*, 2017 WY 36, ¶ 28, 391 P.3d 1136, 1145 (Wyo. 2017) (quoting *KC*, 2015 WY 73, ¶ 44, 351 P.3d at 247); *State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, ¶ 26, 136 N.M. at 62, 94 P.3d at 805. Although Father did not participate personally in the disposition hearing, his attorney attended and participated in the hearing. Counsel did not request a continuance, nor did counsel present evidence or request an opportunity for Father to review the proceedings prior to any rulings. The juvenile court considered Father's input and preferences through its consideration of the case plan and MDT report, in which Father previously participated and concurred. The juvenile court followed the recommendations of the MDT, in which Father participated, and ordered that the children remain in the legal and physical custody of the Department, with continuing efforts toward the permanency plan of family reunification.

[¶51] Father cannot and does not claim to be surprised by the disposition hearing or its results. Furthermore, Father has not identified any evidence he claims he would have offered had he been present, nor has he explained how the outcome of the hearing would have differed. Indeed, it is improbable that the result would have been different had Father been present. *In re Geovanny O.*, No. B247254, 2013 WL 4742870, at *6 (Cal. Ct. App. Sept. 4, 2013). Father was represented by an attorney and his personal presence would have made little or no difference to the outcome. *In re J.M.*, 2020 IL App (2d) 190806, ¶ 47, 153 N.E.3d 1059, 1070 (Ill. App. 2020). Moreover, Father was unavailable due to his voluntary actions, resulting in his incarceration. There is no indication that Father's due process rights were not safeguarded in his absence. *Edwards v. Arkansas Dep't of Hum. Servs.*, 2016 Ark. App. 37, 13, 480 S.W.3d 215, 222 (Ark. App. 2016). Under the circumstances, this Court concludes that Father meaningfully participated in the disposition hearing through his legal counsel; Father's constitutional due process rights were not violated.

## CONCLUSION

[¶52] The juvenile court did not err in its decisions or procedures herein. The juvenile court does not lose subject matter jurisdiction if a petition alleging neglect is deficient and, regardless, the petition was statutorily sufficient. The court did not violate Father's due process rights in failing or refusing to order a competency evaluation or in determining Father was competent to enter into a stipulation. The court acted within its discretion in denying Father's counsel's motion to withdraw and did not violate Father's rights in so doing. Finally, the court did not violate Father's due process rights in proceeding with the disposition hearing in Father's absence, under the circumstances presented herein.

[¶53] Affirmed.